## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARKET AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-494 GMS |
| | ) | |
| GOOGLE, INC. and | ) | JURY TRIAL DEMANDED |
| LTECH CONSULTING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Market America, Inc. hereby amends its Complaint pursuant to Fed. R. Civ. P.

15(a)(1)(A) and complains against Google, Inc. and LTech Consulting, LLC as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff, Market America, Inc., (hereinafter "Market America") is a North

Carolina corporation with its principal place of business located at 1302 Pleasant Ridge

Road, Greensboro, North Carolina.

2.      Defendant Google, Inc., (hereinafter "Google") is a Delaware corporation

with its principal place of business located at 1600 Amphitheatre Parkway, Mountain

View, California.

3.      Defendant LTech Consulting, LLC, (hereinafter "LTech") is a New Jersey

limited liability company with its principal place of business located at 400 Somerset

Corporate Blvd., Suite 500, Bridgewater, New Jersey.

4.      This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. § 1332(a)(2) under diversity of citizenship, in that the matter in controversy

Dockets.Justia.com

exceeds $75,000 exclusive of interest and costs, and each of the parties are incorporated

in different states and have principal places of business in different states.

5.      This Court has personal jurisdiction over the Defendants in that:

(1) Defendant Google is a Delaware corporation; and (2) Defendant LTech has

represented its desire that any dispute arising out of the subject matter of this complaint

be resolved in the State of Delaware, and has thereby waived and is estopped from

contesting personal jurisdiction.

## STATEMENT OF FACTS

### Market America Seeks to Expand the Offerings Available to its Customers

6.      Market America is an Internet marketing and product brokerage company

that has pioneered an online shopping portal similar to Amazon.com, but with each

customer having an online contact or guide on the Internet, a concept known as One-to-

One marketing.  Market America seeks to combine the power of the Internet with the

power of people to create a preeminent online shopping destination.  The site, along with

affiliated overseas sites, such as Market Australia and Market Hong Kong, serves

millions of customers, who are supported by tens of thousands of Customer Managers,

also called "Independent Distributors," worldwide.

7.      In November of 2007, Market America and its affiliated overseas sites

were in the process of dramatically expanding the scope of the offerings available on

their sites, by allowing visitors to the sites to search for and identify not only Market

America-branded products, but also the millions of products sold by Market America

partner stores, referred to as "premier partners" or "affiliate partners."  Visitors could

then link to those affiliate partner sites and complete their purchase.  Through the

creation of Market America's "Universal Shopping Cart," the purchase of an item offered

by a premier partner store could, for many stores, be completed on the Market America

site itself, with payment then made by Market America to that partner.

8.      To enable its visitors to access the millions of products available through

these partner stores, Market America understood that it needed to implement a robust

internal enterprise search capacity – one that could accommodate a high volume of search

requests, access the millions of specific items available for purchase at the partner stores,

and present search results in a quick timeframe consistent with the expectations of its

customers.

**Market America Contacts Google**

9.      In November of 2007, Market America contacted Google, a leader in

Internet search technologies, in an effort to evaluate Google's capacity to assist Market

America in developing an internal capability for its visitors to search the retail offerings

available on the affiliate partner stores.  Google Enterprise Sales Representative Robert

Evanikoff responded to Market America's inquiry.

10.      Google introduced Market America to LTech, a Google "partner" and

member of the Google Enterprise Professional program, to implement a new Internet

search system for Market America.  LTech presented Russ Young, Vice President of

Business Development, as the company's point person for this project.  Upon information

and belief this LTech entity was either the same as, or was the predecessor to, the LTech

entity which is a defendant in this action.

11.      In early discussions, Market America informed Google and LTech that it

needed a search system that could handle 30 million individual products, with the ability

to go up to 50 million products in 6 months, and that could grow to 90 million over time.

Google and LTech representatives unequivocally represented to Market America that

their enterprise search products and appliances could provide a system to meet the needs

of Market America's quickly-expanding affiliate partner store offerings.

12.     Google represented to Market America that its Google Search Appliances

("GSAs") – rack-mounted computer servers with loaded software – would have both the

flexibility and advanced search capabilities to meet Market America's needs.  Google

further represented that, by partnering with their authorized representative LTech (to

whom Google explicitly directed Market America), together Google and LTech could

implement a GSA-based system that would meet all of Market America's enterprise

search needs, with respect to anticipated volumes of products, with respect to acceptable

response times, and with respect to the flexibility of the system.

13.     In November of 2007, Google Enterprise Sales representative Robert

Evanikoff, with the support of Google and LTech engineers, made statements and

presented information to Market America personnel representing the GSAs' scalability

and document capacity.  Additionally, in response to a 45-point questionnaire about the

scope and scale of Market America's needs, Evanikoff returned a document in which

Google represented that to handle an increased number of products, multiple GSAs could

be combined into clusters which would "function as a single unit even though they may

contain multiple nodes."  Two of Google's top engineers, Barry Fong and Nick

Friedman, as well as LTech engineer Bill Mers, were copied on Evanikoff's e-mail to

Market America.  On December 4, 2007, Evanikoff sent to Market America via e-mail a

GSA "deployment guide" which represented that the GSA model GB8008 was "designed to handle document capacity needs of up to…30M."

<b>Market America Contracts with Google and LTech</b>

14.     On December 18, 2007, Google Sales Engineer Gary Gies (who was sent to this meeting by Google's Manager of Enterprise Sales, Tom Mills) and LTech representatives Russ Young and Jason Keicher traveled to North Carolina to attend a meeting at Market America headquarters in Greensboro.  During this meeting, Gies, Young and Keicher evaluated Market America's enterprise search needs and represented that they could install a GSA-based system that could handle 30 million products within three months and 60 million products in 6 months, all with sub-second response times. Understanding that scalability without decreased performance was critical for Market America's needs, Gies, Young and Keicher represented that the GSA system was scalable without a loss of performance simply by adding additional GSA units into GSA "clusters."

15.     These Google and LTech representatives also stated that the final system would have wide flexibility to meet Market America's needs, with features such as automatic spell check that would allow a searcher to avoid missing results through typos or misspellings and the ability to highlight certain products or groups of products in the returned search results.

16.     As a result of this meeting in North Carolina and Google's and LTech's prior assurances and representations, Google, LTech and Market America commenced negotiations for a license agreement, a Google Search Appliance order form and a services agreement to implement a GSA-based enterprise search solution.  The parties

planned to sign the contracts and make a public announcement regarding the relationship

at Market America's Leadership School on February 6, 2008 – an event held at the

American Airlines Arena in Miami and attended by over 20,000 individuals.

17.     The partnership between Market America and Google and the upcoming

announcement at Leadership School were key to Market America's planned development

of its greatly-expanded web portal, as the new search capabilities would result in higher

site traffic, higher revenues to Market America and its Independent Distributors, and

greater exposure for Market America to expand its business.  Additionally, by improving

its search and categorization capabilities, Market America would be better positioned to

convince its affiliate partners that they should become premier partners and sell their

products directly through Market America's Universal Shopping Cart.

18.     Google was aware of Market America's business plan and the importance

of this new search system to Market America's Independent Distributors, and agreed to

send its representatives to the February 6 Leadership School to address the crowd

directly.

19.     At the eleventh hour, Tom Mills, Head of Sales, Mid Market Enterprise

for Google, informed Market America that Google had restructured its business model,

and accordingly a services agreement directly with Google was not necessary.  The final

services agreement would be only with LTech, even though Google would be involved in

the implementation of the GSA system.

20.     Soon thereafter, and in anticipation of the upcoming Leadership School

event, a Services Agreement was signed between Market America and LTech on

February 1, 2008, and a License Agreement was signed between Google and Market

America on February 4, 2008.  Through an "LTech Google Search Appliance Form,"

Market America acquired one GSA model 800815MDNSTD and related equipment and

services, for a price of almost $1 million, with an asserted capacity to handle 15 million

documents, and an option to upgrade search capacity through the acquisition and

installation of additional licenses and GSA 8008 machines, with each additional license

or machine providing an incremental 15 million document capacity to the search

capabilities, up to a purported capacity of 90 million documents.

      21.     Attached to the Services Agreement was a Statement of Work ("SOW"),

which, consistent with the prior representations of both LTech and Google, committed to

implementing a GSA system which would:

> leverage the speed and power of the Google Search Appliance (GSA)
> platform to deliver relevant search results in a variety of formats and zones
> to empower Market America users with up-to-date and on-target product
> information. *The GSA will generally serve search responses in sub one-
> second time frame.*

The SOW promised that provision of all services, along with acceptance testing, would

be completed by June 15, 2008.

**Market America Announces the Soon-to-Be Implemented Search Capabilities**

      22.     After these agreements were in place, in a joint press release on February

4, 2008, Nitin Mangtani, head of Google Enterprise Search Products, stated: "We are

pleased to work with Market America to deliver search capabilities to the over 3 million

customers that shop there.  Together we are implementing a search solution that will

revolutionize the way Market America's customers shop online."

      23.     On February 8, 2008, Market America introduced the new Google

relationship and the upcoming search capabilities to a crowd of over 20,000 Market

America Independent Distributors, customers, and vendors at Market America

Leadership School in Miami.  Cyrus Mistry of Google, accompanied by an LTech

representative onstage, addressed the crowd and announced the relationship and the

benefits that Google's search appliances would provide to Market America, its

Independent Distributors and partners.  In connection with its advertising and

promotional efforts, Market America distributed video and news of this event throughout

the Internet and in print, press releases, videos, television news stories and blog posts.

24.     Market America's Independent Distributors were highly enthusiastic about

the new Google partnership, and the new search capabilities the partnership would

provide to the Market America portal, and the portals of overseas affiliate companies

such as Market Australia.  The Independent Distributors understood that the new

capabilities would provide higher site traffic and corresponding higher revenues.

25.     In reliance on Google's and LTech's promises that an acceptable search

system would be in place by June 15, Market America hired product merchandisers and

other personnel, purchased additional software and hardware to support its anticipated

increased capabilities, and continued to make public announcements to court premier

partners to join its Universal Shopping Cart.

**Google and LTech Fail to Provide the Capabilities Promised**

26.     In April of 2008, the Google Search Appliance was installed at Market

America.  Load testing of the system by LTech showed response times in the 8 to 15

second range, with the system crashing at 15 queries per second.

27.     On June 25, 2008, after the date that the system was supposed to be up and

running, and with no effective GSA appliances on hand, Google representative and Head

of Sales, Tom Mills, told Market America: "I can do nothing but apologize profusely for the delays on your project – I am truly sorry for that and promise you we are doing our best to find an effective solution."

28.     On June 26, 2008, Mr. Mills suggested that it would be necessary "to scale back a bit from the initial plan to ensure a reasonable level of performance."

29.     On or about June 30, 2008, during a conference call between the parties, LTech's representatives suggested that they could implement a temporary system that would be "more digestible."  Google's representatives admitted to Market America that its current GSA system was not scalable to 30, 50, or 90 million products, as Google and LTech had previously represented, and that the parties would need to look forward to a different long term system, which would necessarily utilize a different hardware configuration.  Google's representatives specifically acknowledged that they needed to do a better job than they were doing, and promised to devote resources to delivering a long term GSA-based system.

30.     Soon thereafter, during a conference call on July 8, 2008, Google representatives explicitly declared that its GSA could not perform any better, and confirmed that a different system would need to be installed by Google's engineers.

31.     Throughout the summer, Google's engineers, on a daily basis, represented to Market America that resources were being used to produce a final search system that would deliver what Google and LTech had promised.

32.     In fact, however, neither Google nor LTech were able to implement an effective GSA search system or ensure a reasonable level of performance.  In July, Google proposed an interim system that could handle 2 million documents, well below

9

the volumes initially promised by Google and LTech.  Google assured Market America

that its short term solution would work while Google and LTech sought to implement an

acceptable long term GSA system.

33.     Market America's International Convention, held at the Greensboro

Coliseum in Greensboro, North Carolina, was scheduled for August 8, 2008 – another

event attended by over 20,000 individuals.  Cyrus Mistry of Google again addressed the

crowd to ensure Market America's Independent Distributors, customers, vendors, and

partners that an acceptable system would be implemented.  In connection with its

advertising and promotional efforts, Market America distributed video and news of this

event throughout the Internet and in print, press releases, videos, television news stories,

and blog posts.

34.     The proposed short term GSA system went live during International

Convention, and the appliances crashed.  In the crash's aftermath, Market America was

left with a short-term fix that was no better than the search capabilities it already had in

place before Google promised a better, GSA-based system.

35.     Independent Distributors and multiple partner stores began to express

concern about the delays in the project, several partner store relationships were

negatively affected and various potential partner stores either discontinued or delayed

discussions about signing on as partners.  Indeed, after being informed that Market

America's search capabilities could not support the number of products required by such

partners, some partners chose to remain as affiliate partners and some backed out of any

relationship with Market America altogether – all to Market America's detriment.

36.     On or about August 6, 2008, the same week as Market America's International Convention, and eight months after Google and LTech promised Market America a search capacity to handle 15 million documents, and an option to upgrade search capacity up to a capacity of 90 million documents, Google publicly advertised that it was to sell a GSA system that could handle up to 10 million documents.

37.     Market America continued to work with Google and LTech to develop a GSA system that would provide sub-second response times for the volume of products Market America needed and with the features that Google and LTech originally promised was possible, expending additional sums on additional hardware and computer programming and on internal resources, but after several months it became clear that Google and LTech could not meet their initial and ongoing promises.

38.      LTech began to advertise on its website, through a "case study" that after Market America identified Google for its search engine to search over 50 million products, LTech had developed a GSA search system for 3 million products.

39.     By the end of 2008, Google and LTech remained unable to provide Market America with the long term GSA-based search system that they had promised time and again.  On January 2, 2009, Market America informed Google that it would not be proceeding with the implementation of a GSA-based enterprise search capacity.

40.     On July 6, 2009, Market America tendered back possession of the GSAs to Google and LTech.

41.     Market America has incurred and continues to incur significant costs in developing an alternative enterprise search capacity.

## COUNT I
### Fraudulent Inducement

42.     Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

43.     As set forth above, Defendants Google and LTech made false or materially misleading statements to Plaintiff about the capacity of its GSAs and a GSA-based search system to handle high volumes of documents at acceptable speeds.

44.     Defendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity.

45.     Defendants' misrepresentations were willful and material.

46.     Google and LTech proffered these statements with the intent that Market America would rely on the representations when deciding to enter into contractual agreements with the Defendants.

47.     Market America relied on Defendants' representations to its detriment when it agreed to enter into the Service Agreement and Google Search Appliance order form with LTech, the License Agreement with Google, and expended significant sums of money in connection with those representations.

48.     Based on Defendants' misrepresentations, Plaintiff is entitled to rescission, compensatory damages and punitive damages from Defendants.

## COUNT II
### Fraud

49.     Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

50.     As set forth above, Defendants Google and LTech made false or

materially misleading statements to Plaintiff about the capacity of its GSAs and a GSA-

based search solution to handle high volumes of documents at acceptable speeds.

51.     Defendants Google and LTech continuously represented that a long term

system could be implemented, and that the GSA-based search system would meet Market

America's needs.

52.     Defendants knew these representations to be false when they were made

or the representations were made with a reckless indifference to their truth or falsity.

53.     Defendants' misrepresentations were willful and material.

54.     Google and LTech proffered these statements with the intent that Market

America would rely on the representations when deciding to enter into and continue its

relationship with Defendants.

55.     Market America relied on Defendants' representations to its detriment

when it agreed to enter into and continue its relationship with Defendants, and expended

significant sums of money in connection with those representations.

56.     Based on Defendants' misrepresentations, Plaintiff is entitled to

compensatory damages and punitive damages from Defendants.

### COUNT III
### Rescission for Failure of Consideration

57.     Plaintiff repeats and realleges each allegation identified above as if fully

set forth herein.

58.     As set forth above, Defendant Google agreed to enter into a License

Agreement with Plaintiff and Defendant LTech agreed to enter into a Services Agreement

with Plaintiff to provide Google GSAs which would perform queries on between 30

million products and 90 million products in sub one-second time frames.  Plaintiff would

not have entered into these agreements unless these requirements were fulfilled.

59.     From the beginning, the Defendants have not been able to provide goods

or services which fulfilled the requirements of performing queries on between 30 million

products and 90 million products in sub one-second time frames.

60.     As a direct and proximate result of the Defendants' failure to fulfill these

requirements, and as a further direct and proximate result of the failure of the GSAs

provided by Defendants to fulfill these requirements, the License Agreement and

Services Agreement have failed in their essential purpose and are totally lacking in

consideration.

61.     Based on this complete lack of consideration, Plaintiff is entitled to

rescission and compensatory damages from Defendants.

### COUNT IV
### Unfair and Deceptive Trade Practices

62.     Plaintiff repeats and realleges each allegation identified above as if fully

set forth herein.

63.     The Defendants, jointly and severally have engaged in unfair and

deceptive trade practices in that each Defendant individually and in concert intentionally

or recklessly represented their products and services as having characteristics and

capabilities, which characteristics and capabilities the Defendants knew the products and

services did not possess and were not capable of possessing.  More specifically, each

Defendant represented the Google GSAs and GSA-based search system as having the

capacity to query between 30 million products and 90 million products when they knew

the Google appliances did not and could not possess such a capability.  In addition to

misrepresenting the GSAs' ability to handle the promised product volumes, each

Defendant represented the Google GSAs and GSA-based search system as having the

capacity to provide search responses for 30 million to 90 million products in a sub one-

second time frame, when they knew the Google appliances did not and could not possess

such a capability.  At all times herein, Google and LTech continued to represent that they

would be able to implement a long term GSA-based search system that would function as

they had promised.

        64.      The misrepresentations were in and affecting commerce in that they were

designed to induce Plaintiff to enter into a Services Agreement and Google Search

Appliance order form with Defendant LTech, a License Agreement with Defendant

Google, and expend significant sums of money in connection with those

misrepresentations.

        65.      Market America relied to its detriment on the Defendants'

misrepresentations and, as a direct result, incurred substantial damages.

        66.      As a direct and proximate result of Defendants' unfair and deceptive trade

practices, Market America is entitled to compensatory and statutory, treble, exemplary

and/or punitive damages.

## PRAYER

      WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants

as follows:

        a.      That judgment be entered against the Defendants, jointly and severally, for

fraudulently inducing Market America to enter into contracts with the Defendants, by

falsely representing the Defendants' products and services would meet certain

measurable minimum levels of performance when Defendants knew the products and services would not be capable of doing so;

b.      That judgment be entered against the Defendants, jointly and severally, for common law and statutory consumer fraud, for holding products and services out as having certain capabilities when the Defendants knew the products and services were not capable of performing as represented;

c.      That judgment be entered against the Defendants, jointly and severally, for unfair and deceptive trade practices, for holding products and services out as having certain capabilities when the Defendants knew the products and services were not capable of performing as represented;

d.      That this Court declare that all contracts entered by the parties be rescinded;

e.      That compensatory damages be awarded to Market America against the Defendants, jointly and severally, for all actual and consequential damages incurred by Plaintiff as a direct and proximate result of Defendants' wrongful conduct;

f.      That statutory, treble, exemplary and/or punitive damages be awarded against the Defendants because of their wrongful conduct; and

g.      For such other relief as this Court determines is just and proper, including attorney's fees, interest and costs of this action.

**MORRIS JAMES LLP**


  */s/ Richard K. Herrmann*
Richard K. Herrmann (#405)
Matthew F. Lintner (#4371)
Jody C. Barillare (#5107)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
mlintner@morrisjames.com
jbarillare@morrisjames.com

*Attorneys for Plaintiff MARKET AMERICA, INC.*


Dated:  September 30, 2009