1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

PERSONALIZED USER MODEL, L.L.P.,
                                    :    CIVIL ACTION
            Plaintiff,              :
                                    :
            v.                      :
                                    :
GOOGLE, INC.,                       :
                                    :    NO. 09-525-LPS
            Defendant.              :
                                 - - -

                    Wilmington, Delaware
               Wednesday, September 8, 2010
                    *TELEPHONE CONFERENCE*

                            - - -

BEFORE:          HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

                            - - -

APPEARANCES:


            MORRIS NICHOLS ARSHT & TUNNELL, LLP
            BY:  KAREN JACOBS LOUDEN, ESQ.

                    and

            SONNENSCHEIN NATH & ROSENTHAL, LLP
            BY:  MARC S. FRIEDMAN, ESQ.
                 (New York, New York)

                    and

            SONNENSCHEIN NATH & ROSENTHAL, LLP
            BY:  MARK C. NELSON, ESQ.
                 (Dallas, Texas)

                    and

                              Brian P. Gaffigan
                              Registered Merit Reporter

APPEARANCES:   (Continued)


                SONNENSCHEIN NATH & ROSENTHAL, LLP
                BY:   JENNIFER D. BENNETT, ESQ.
                      (Palo Alto, California)

                          Counsel for Plaintiff



                POTTER ANDERSON & CORROON, LLP
                BY:   RICHARD L. HORWITZ, ESQ.

                      and

                QUINN EMANUEL URQUHART & SULLIVAN, LLP
                BY:   DAVID A. PERLSON, ESQ., and
                      EUGENE NOVIKOV, ESQ.
                      (San Francisco, California)

                          Counsel for Defendant




                          - oOo -

                   P R O C E E D I N G S

          (REPORTER'S NOTE:  The following telephone

conference was held in chambers, beginning at 10:08 a.m.)

          THE COURT:  Good morning, everybody.  This is

Judge Stark.  Who is there, please?

          MS. JACOBS LOUDEN:  Good morning, your Honor.

For the plaintiff, this is Karen Jacobs Louden for Morris

Nichols; and I have on the line with me Marc Friedman, Mark

Nelson and Jennifer Bennett from the Sonnenschein firm.

          THE COURT:  Okay.

MR. HORWITZ:  Good morning, your Honor.  It's Rich Horwitz at Potter Anderson for the defendant; and with me from Quinn Emanuel, David Perlson, and Eugene Novikov.

THE COURT:  Okay.  Good morning to you as well.

That's everybody, correct?

MS. JACOBS LOUDEN:  Yes, your Honor.

THE COURT:  Okay.  So for the record -- and I do have a court reporter here today -- this is our case of Personalized User Model, LLP v Google Inc.  It's our Civil Action 09-525-LPS; and we're here today to discuss a number of discovery disputes between the parties that are set out in the series of four letters.

Of course, I've read the letters, but I do want to give you all a chance to supplement what you have written with any additional argument, and each side is complaining about certain things.  I think it is probably best to address them all together.  So what I will do is first give the plaintiff an opportunity to address all the issues in dispute, and then give the defendant that same opportunity; and you can each have a brief rebuttal, if need be.

So let me turn it over to the plaintiff.

MS. JACOBS LOUDEN:  Thank you, your Honor.  Mark Nelson will present the issues for the plaintiff.  Then I'll address the bifurcation issue when he is done.

THE COURT:  Okay.

MR. NELSON:  Good morning, your Honor.

THE COURT:  Good morning.

MR. NELSON:  I guess we view the issues here as very interrelated.  Part of the central issue here seems to be the number of claims, and really not an "if" the number is going to be reduced but a "when."  And with that, I want to talk about the invalidity contentions first because they play into sort of the timing of the reduction of claims.

And the parties, as you probably gathered through the correspondence, there has been ongoing, you know, efforts to get additional discovery.  Those efforts continue, and Google has recently agreed to produce documents and source code pursuant to the whole series of letters that were parts of Exhibit 4 and Exhibit 5.

We sent a letter, I think it was yesterday, it may have been Monday but I think it was yesterday, in an effort to further see if we could reduce the dispute and reduce the number of claims given the information that we had.

We sent a letter to Google further reducing the number from what was 67 or 68 claims down to I think now what is 36 claims that remain in issue.  However, we don't think we should have to reduce it further because of basically the lack of information that we still don't have; and that gets me into the invalidity contentions; and so we

thought we had a deal where we would provide infringement contentions on the 16th of July; and then on the 27th of August, Google would provide us invalidity contentions for that group of claims.

We went through and we did our part. We got really the first meaningful productions of source code and documents in May. We worked like crazy to chart 68 claims; and while Google points to a few claims that we reserved our right to add information to because we didn't have the code necessary at that time, we felt, to do a full blown chart but we had good faith belief that those claims were infringed, there is a few that we were not able to chart.

Then basically the night before the contentions are due, we got from Google that they weren't going to produce the invalidity contentions and basically their letter sets forth three arguments.

The first is, you know, we've provided the art so you don't need the contentions.

I think that argument is just a nonstarter. If that were the law, you wouldn't have to do infringement contentions or invalidity contentions. The parties would just say you guys got the documents, go figure it out.

Their second argument is there really wasn't an agreement because they made it contingent on sort of their approval of the contentions.

And, again, I don't think that was the intent. I mean our side worked very hard to provide very detailed charts which Google attached for all of these claims and, we felt we're entitled to understand their invalidity position for all of these claims.

The third argument is really, well, since even PUM admits that we're going to reduce the claims further for trial, you know, just reduce them now because it's a waste of time for Google to chart claims that aren't ultimately going to be asserted.

And I mean I think that's where the real rub is, is that we don't want to be forced to make choices in the dark about what claims were ultimately going to assert at trial. The Court hasn't had a Markman yet. We don't have all their documents. We've written innumerable letters asking for very specific source code which they've now agreed to produce, you know, in the middle of this month; and we don't think limiting us -- well, going back to the invalidity contentions first. We believe that going into the Markman process and with the further reduction to 36 claims, that there is absolutely no reason why we should not be entitled, prior to Markman and prior to reducing the claim number further, to understand their invalidity positions in full.

THE COURT: All right. Mr. Nelson.

MR. NELSON:  And that is really -- oh, go ahead.

THE COURT:  So your position today is you want to continue to assert 36 claims until you get their invalidity contentions in response to the 36 claims or still you're looking for responses to the 67 claims?

MR. NELSON:  No, our position is we only -- since we reduced the number further, we only need their invalidity position for the 36 claims at this point.

THE COURT:  And of those 36, how many of them are not actually charted, are just merely a reservation of rights?

MR. NELSON:  I don't know the precise answer to that, but I can tell you that of the group that they listed that were not charted for invalidity, they listed four claims, I think it was like 7 and 8 and then the corresponding method claims of the '040 patent, well, those are Markush claims that had a large number of elements.  We charted several of those elements so I don't think those claims should count as not being charted.

So at most of the 36 that were listed, that remain, even assuming that all of the ones they list as not being charted are among the 36, which I'm not 100 percent sure is correct, at most then it would be five or six that were not charted.

THE COURT:  Okay.  And if I were to do something

like require them to respond with their invalidity contentions to those among the 36 that you have charted and then give you some small amount of time after that to reduce your number of asserted claims to 10, what types of time frames would you suggest I plug in for those two steps, and what would that do to the current Markman schedule?

MR. NELSON: Well, Your Honor, we would like to have -- we think 10 is a little bit of an arbitrary number, first of all.

But, secondly, we would like to have the benefit of the Court's Markman ruling as well before we make our final cuts to those asserted at trial. We certainly feel that Google infringes all of the 36 but understand that it's not going to be practical to try 36 claims. What we would like is to be an able to further reduce it one more time to a number less than; and I mean a meaningful reduction, I don't mean 35 or something; you know, after we've gotten the invalidity contentions and after we've gotten additional discovery that they promised and had a time to evaluate that.

THE COURT: Then, what do you propose I do to make sure that the Markman process then doesn't get out of control and you all ask me to, you know, construe 150 claim terms?

MR. NELSON: Well, we've got a little bit of play in the schedule, your Honor, with the Markman. It's my

understanding that we don't have a date in December for the actual hearing.  One possible suggestion would be to push the briefing off for some, you know, not too lengthy a time, that would allow us to get their invalidity contentions and get their discovery and evaluate it and then make one more cut of claims prior to going into the Markman procedure. That would be a meaningful cut but not limiting us to 10.

THE COURT:  Okay.  We'll come back to you, but unless you have anything quick to add, I want to hear from Ms. Jacobs Louden and then move on to hear from the defendants.

MR. NELSON:  Okay.  I haven't addressed the deposition issue.  Does your Honor want to just take that separate?

THE COURT:  Oh, you're right.  I didn't realize, right, you were going to address that.  Move on to that one then.

MR. NELSON:  Okay.  I mean our position on that is pretty straightforward, is that typically when inventors are offered for more than a seven-hour deposition, it's considered a single deposition.  It's not considered, you know, you get two bites.  You get to take the inventor early and then wait until the end of the case and take him again.

It's our position that that is what the parties intended all along.  I point out what was attached

as Exhibit 8 to PUM's briefing; and that is one of the draft scheduling orders that went back and forth.  In that draft order, on page 2, it says each of the named inventors may be deposed 12 hours; and then will plaintiff be producing the inventor in Germany, and that is underlined as an addition.

That is then sent to Google.  And after a series of correspondence, it looks like on page 2 of the e-mail chain, David Perlson responds that his red lines would most likely just address any scheduling conference and some discovery points and perhaps try to add some additional time to dates to account for the claim construction ruling.

There is no evidence that anybody was thinking you get two seven-hour days to take whenever you want to take them.  So it's our position is that it's 14 hours, it's a single deposition.  That is the way it's normally done, and that is the way it should be done here.

THE COURT:  Of course, the language that you all agreed on, though, is two seven-hour depositions.  Normally, what I would have seen is, you know, a deposition up to 14 hours or 14 hours of deposition time.  So your view is the specific language, "two seven-hours depositions" with no reference to when those two have to happen, should in this case be interpreted to mean two back-to-back days.

MR. NELSON:  That is correct, your Honor.  It's our position that was the understanding.  The language is

what it says, but it also doesn't say that the two seven-hour days must be, you know, months apart.

THE COURT:  Okay.  Let me turn to Ms. Jacobs Louden then.

MS. JACOBS LOUDEN:  Thank you, your Honor.  I'll address PUM's request that damages and willfulness not be bifurcated and that we have an unitary proceeding here.

I'll start with how the issue came about in the first place, which is that the Court entered a scheduling order in April of this year.  There was no scheduling conference, there was no argument.  The parties submitted a scheduling order pursuant to Judge Farnan's order.  The scheduling order had a few competing provisions.  They did not contain any argument.  There was no discussion of particular circumstances.

Judge Farnan ultimately entered an order in April that got the case started but doesn't finish it.  Mr. Nelson mentioned that there is no Markman hearing, no pretrial conference or trial date.  That isn't surprising given that Judge Farnan was due to retire in a few months, so it was really a scheduling order that was meant to get things started.

It also adopted Google's provision that the case be bifurcated in terms of damages and willfulness, but it was for discovery and trial.

Immediately after that order came down, we wrote to the Court to explain why we thought bifurcation was both unnecessary and prejudicial under the particular facts of this case; and there was, as your Honor has seen, several letters exchanged on that.  I note that Google argues now that it wasn't full briefing, but, of course, I find that a little bit ironic that there, of course, was no briefing at all when the order was initially entered.

Probably the most important factor here is that the inventors here are trying to run a small business.  They made and marketed personalized search products.  They put Google on notice; and Google ignored them and wouldn't engage.  They couldn't succeed in the marketplace because of Google's dominance; and they now sell other products, voice recognition products.

But the Court's order has the effect of both doubling the time and expense by making this case into two proceedings rather than one and prolonging the time that PUM is kept out of the market and denied compensation for the infringement.  This really is a circumstance where justice delayed is justice denied in this type of David-and-Goliath situation; and, of course, the magnified expense that Google does in double proceedings greatly benefits Google.

This case is really not so complicated that there is any real efficiency to be gained by bifurcation.

It's not a multiparty case.  There is just the two parties. There are three related patents.  Much of the evidence will come in any way from commercial success or inducement.  What really happens here is by not getting the damages discovery, settlement is really hampered, and although Google has said it would provide some financial discovery for settlement purposes, of course, there is a big difference about what kind of information you get through discovery versus the hand-selected information that you might get pursuant to a Rule 408 discussion.

So now that the case is in your Honor's hands, it's really a question of how the case will be managed going forward.  It was in transition mode when the scheduling order was entered this spring.  We look forward to putting some meat on the bones so we can get a Markman date with your Honor; and that feeds in with what Mr. Nelson was talking about in terms of when we can go through this process of getting full discovery and then whittling down the claims.

But we would very much like to proceed on a unitary basis.  We think that can happen without really adjusting the schedule.  We have until the end of February to complete fact discovery, so we have five months to go, and so we don't think any change is needed; but we would like to see the case move forward with dates for Markman

and a pretrial and trial date and have discovery go forward on all issues.

THE COURT:  All right.  But you agree, do you not, that you flagged the issue for Judge Farnan in your cover letter.  You flagged it for him in the proposed scheduling order.  He ruled against you in that he entered a scheduling order which required bifurcation; and then you didn't file a motion for reconsideration, you filed this letter, and that did not prompt Judge Farnan to do anything further.

Given all that, on the merits, if this were in front of me on a blank slate, even if I might agree with you, how is it that you meet the high burden that I should apply in this type of context to go back and revisit something that Judge Farnan already decided?

MS. JACOBS LOUDEN:  Well, your Honor, I guess we were considering it in the context of a scheduling order that had no briefing, no hearing, no presentation and our letter in a way was asking for a conference to be able to discuss those issues with him.  We all know how busy Judge Farnan was, as he was finishing his practice; and we, of course, can't get into his mind to know whether the fact he didn't address the letter was intentional or just as a result of the many matters he had before him.  But our letter was by way of a request to have a hearing on the

matter so that we can discuss the particular circumstances of bifurcation in this case.  Of course, it is the law that it is the party who is seeking to bifurcate who bears the burden and Google has never done that.

THE COURT:  All right.  Let me turn it over to Google to address all those issues, please.

MR. PERLSON:  Good morning, your Honor.  This is David Perlson.  I'll be handling it first.

First of all, on the number of claims and invalidity contentions, I agree those issues sort of come together so I'll address them together.

I think the proposal that you made on or the suggestion you had made about the taking from 36 to 10 was a good one and certainly would be acceptable to Google.  I think had the claims been reduced to 36 earlier, perhaps there wouldn't have been a dispute or perhaps it would have been a different one.

We've, you know, never refused to provide invalidity contentions.  We simply didn't think it was fair or necessary or made any sense for us to chart all sorts of claims that weren't going to ever see the light of day.  And I think that the reduction to 36 claims yesterday shows that it wouldn't have made any sense to chart all those other claims.

So we're willing to chart the 36 or 38, whatever

the exact number is, and if -- you know, I'm not exactly sure what the play is in the schedule. I think there is probably some room for movement of additional time. I think, though, that the reduction should be down to 10; and I think that that is a fair number. We've cited a number of cases where it's shown that that is a typical number asserted.

And even 10, you know, it's unlikely that even 10 claims would ultimately be asserted at trial. So it's not like they'd have to pick everything that they would use at trial. I mean, look, you know, to keep the jury's attention, realistically, it probably would be more like four or five that would eventually make it.

So cutting down to 10 at this point I think would be perfectly fair. I mean, you know, I don't think that plaintiff necessarily even needs our invalidity contentions to figure that out. They're the plaintiff and they should be able to figure out the claims that they want to assert for their case. But we're happy to move forward on the schedule as you have suggested.

THE COURT: And how long, reasonably, do you need to respond to the 36 now?

MR. PERLSON: Well, the one thing, your Honor, I don't know is there are some claims that have many, many elements. I don't know which of those were out. I just

haven't had a chance to look at the specific 36 claims.  I would think that, you know, three or four weeks would be sufficient to do that for 36 or 38.  It could be less.  I just haven't had a chance to look at the particular claims that are going to be at issue.

THE COURT:  And if I gave you three weeks to respond and gave them two weeks after that to reduce the number of asserted claims to 10, what does that do to the Markman schedule from Google's perspective?

MR. PERLSON:  Well, I think we -- I'm sorry.

THE COURT:  I was just going to say if it does anything.

MR. PERLSON:  Yes.  I think we would need to move the briefing a little because that would -- I think that that five-week period would end after the time in which the opening briefs are currently due.  I definitely think it makes sense to have those 10 claims at hand before we start briefing, because I think at this point, you know, we're at the point where defendants are at about 40, when we had identified -- I think we identified 50 terms; and I think they had -- that is maybe down to 40 with the reduction to 36; and I would be hopeful that we would be able to further reduce that if we get down to 10, plus, hopefully, we can agree on some terms.

But I definitely don't think it makes sense for

the Court or the parties to engage in the opening briefs until we get to that 10.  From our perspective, we're fine with coming up with a schedule that bumps it back a little. I think there is enough room to do that.

THE COURT:  Okay.

MR. PERLSON:  So I don't think, unless the Court has any further questioning, I don't think we have anything further on the number of claims in the invalidity contentions.

THE COURT:  That's fine.  You can move on.

MR. PERLSON:  For the inventor depos, I think that your Honor really made the point that I was going to make, in that the order says what it says.  It says two seven-hour depositions, and that was the point.  We wouldn't have agreed to one 14-hour deposition.  It doesn't say that. And I think the fact that it was changed from one 12-hour deposition to two seven-hour depositions shows exactly what our intent was.  That we didn't want it just one deposition.

So the change that plaintiff points to in their response I think actually shows the agreement to be what we say it was and what the plain language of the order says. You know, I think that the plain language of the order is really the clearest thing on the point.

THE COURT:  And what if I don't agree on the clear language?  It's certainly an unusual interpretation or an unusual provision.  Why do you need to separate in time

these inventor depositions?  Why should I be amenable to you doing that?

MR. PERLSON:  Well, I think that part of the reason why we wanted to do this and why we have actually done it in other cases, or at least it has turned out that way, whether by agreement or otherwise, is that, first, you know, oftentimes at the beginning of the case, one of the things that we want to talk about with inventors is, you know, what they invented, what these claim terms mean, that kind of thing.  Then oftentimes, you get an inventor saying, well, I don't know what it means.  It's an issue for the Court to decide.  Then later on, there is a construction, and then the inventor is able to get up and say, you know, what they invented based on the Court's construction and point out the fact they didn't have that at the time of their earlier testimony.  So that's one point, one reason why it makes sense to take them both at the beginning.

Also, two of the named inventors here are essentially the plaintiff of the spinoff company that was created solely for the purpose of this litigation and really shouldn't be much of an issue of burden for these two individuals who are likely driving this litigation and presumably will be seeking millions of dollars against Google; and so as a matter of fairness, I think it's not unreasonable to have them appear twice, as was the

agreement.

Then, finally, another reason to do it is that discovery is ongoing. We've gotten some discovery from plaintiff. We think there is more out there just as, you know, presumably they think so, although obviously we disagree with their characterization. To the extent that other discovery occurs later and we find out different things, we'd like to be able to take a second deposition as to that.

But, you know, the main point is that this is what was agreed to and it's part of the negotiation of the terms; and, you know, we gave some things, they gave some things; and for plaintiff to come in now and try to assert a different agreement is we think completely unfair. I think the history shows that it is really someone came in later who wasn't involved in the earlier negotiations and says, why did we agree to this? Let's not agree to it.

I mean even when they proposed the dates, it seemed like that they recognized that we weren't tied to having two days. If they did, then they would have proposed two days.

THE COURT: And briefly on bifurcation.

MR. PERLSON: Your Honor, I think that this issue was before Judge Farnan multiple times. The second time was a procedurally improper letter. They should have

filed a motion for reconsideration, they didn't, and now it's unreasonable for them to now ask you to try to do what he correctly refused to do procedurally.

They certainly haven't met their burden to show why any ruling that Judge Farnan made was so grossly improper that it would require you to do this. As Your Honor knows, bifurcation is a pretty typical thing.

Finally, I'll note that the facts that plaintiff's counsel laid out on, you know, this delay and things -- justice delayed I think is just completely false. What actually happened here, your Honor, is that plaintiff or this Utopy, which is spun-off PUM, which is the plaintiff, worked on this personalized technology in mostly 2000 and for whatever reason decided not to pursue it, and it had nothing to do with what Google was or wasn't doing.

Years later, they did contact Google, but from a document we've seen, it seems like they were looking at Google as a potential target for their patents back in 2005, and yet they didn't bring their lawsuit until 2009. So there is no justice delayed here. Plaintiff could have brought their claims long ago if they felt they had a basis to bring them. For whatever reason, they waited and apparently felt they had a claim to bring at the time they did; and this David-and-Goliath type stuff is just completely inappropriate and has nothing to do with the

merits of the issue here.

THE COURT:  Okay.  Thank you.

Anything further from the plaintiff?

MR. NELSON:  Yes, your Honor.  This is Mark Nelson.  I'd like to respond just briefly.

With respect to the claim term invalidity chart issue, I think that we're in agreement with Google with respect to the play in the schedule.

I think the last part that remains here is the number of claims.  I'll point out the cases that Google cite, particularly *Fenster* and some of the others, they all talk about limiting the plaintiff to 10 claims after the close of discovery, after Markman ruling, so that the plaintiff really has the opportunity to fully evaluate the evidence and pick the ones that it is going to go to trial with.  Our position is that limiting us to 10 sort of pre-Markman is a little bit unfair.

We're certainly committed to reducing the number further; and, you know, 15 to 20 might be more reasonable; but, you know, until the Markman ruling comes out and we know sort of what the Court has construed some of these terms to mean, you know, most of the case law that we've seen, *High Point*, for example, that we've cited in our letter, doesn't force those reductions that early.

I'll point out the timing.  We received the

first meaningful production from Google in mid-May.  We then reduced from the original set of claims from 88 on July 1st to 67 on July 16th and now on September 7th to 36.  And so we're not trying to overburden Google or anything like that. We're trying to get to the point where we can assert our best claims based on all the known information in this lawsuit.  So if the concern is, well, how to make the Markman manageable, a lot of that is dealt with or can be dealt with by limiting the number of terms to be construed.

A lot of the courts with patent rule jurisdiction, with patent rules put limits on the number of terms because defendant can always list every word in the claim and create a huge Markman headache, but just because the fact a word exists in the claim doesn't necessarily mean that it needs to be construed.  So if the concern is that way, you know, we'd be open to some limitations on the number of terms to be construed as well as opposed to limiting us to just 10 claims going into the Markman process. So that is sort of my point on at.

With respect to the depositions issue, the scheduling order I believe says two seven-hour days, not two seven-hour depositions.  And, you know, we think that the parties did understand that it meant 14 hours of depositions total and not two days.

The other issue there is, you know, Google's

counsel speaks of fairness.  They have taken the position that they will only produce their witnesses once regardless, whether it be 30(b)(6) or 30(b)(1) or anything else.

Now, we may challenge that position at some point with respect to certain witnesses, but it seems odd that they want two bites at our inventors, you know, in an issue that we certainly think the parties understood meant one single 14-hour deposition at max and yet they'll only produce their own witnesses, you know, one time, you know, presumably for seven hours.

And so, you know, we just disagree; and the way these are normally done in patent cases where the inventors get extra time, it's usually one deposition.  You know, we certainly think that is what was contemplated here and think that that is what it should be.

THE COURT:  Okay.  And anything briefly on bifurcation?

MS. JACOBS LOUDEN:  Very briefly, your Honor.

What we didn't hear in the response is really any argument of what bifurcation is appropriate here, and certainly there can't be any.  He just said.  It's really a question of whether your Honor will have two separate cases with two separate discovery periods or whether we go forward with a single discovery period where damages and willfulness could be addressed at the same time in our

existing schedule.  It's not overly complicated; and now that the case is in your camp, I would think entering a scheduling order that sets forth those dates and a Markman and pretrial conference is the way to proceed.

THE COURT:  Okay.

MR. PERLMAN:  Your Honor, this is Dave Perlman. Can I address one thing?

THE COURT:  Just briefly.

MR. PERLMAN:  Yes.  I think if you look at the *Fenster* case, it wasn't -- the reduction to claims was not done after the close of fact discovery, and I think that the order reducing the number of claims actually came before the Markman hearing.  I think that that is important as a factual point of view in plaintiff's attempt to distinguish these cases.  And as far as limiting the claim terms at issue, I mean the number of terms at issue is directly related to the claims; and the way to limit it, as courts have routinely recognized, is through the amount of claims asserted.

If plaintiff thinks we have asserted too many terms, we can address it at that point, but I don't think that will be an issue if we're down to 10.

MR. NELSON:  Your Honor, just briefly on *Fenster*.

THE COURT:  No.  Mr. Nelson, I've heard enough. Thank you.

MR. NELSON:  Thank you.

THE COURT:  Let me, because I only have a couple more minutes with you all and I'm ready to give you my rulings.

First, on the related issues essentially of plaintiff's motion to compel gobble Google to respond to the now, I guess it is, 36 infringement contentions and the defendant's request that the plaintiff reduce the number of asserted claims, all of which in my view are tied up with how we're going to proceed in an orderly fashion through Markman and then ultimately to trial.

What I am doing is modifying the scheduling order such as to require Google to respond with its invalidity contentions in response to the now 36 asserted claims that have been charted by the plaintiff, and Google has 21 days from today to do that, so three weeks.

Within 10 days after Google does so, the plaintiff will reduce the asserted claims to no more than 15.

What I further want the parties to do is, in response to these rulings, is to meet and confer and propose to the Court a modification to the scheduling order which sets out the procedures and timing for identifying and briefing a total of no more than 12 claim terms for the Court to construe at a Markman hearing.  After we get your proposals as to the timing of the Markman briefing process,

we'll set a Markman hearing date.

In my view, all of this reasonably accommodates the competing interests not only of both parties but also of the Court and ultimately of the jury.  The Court can only do so much.  We can only handle so many disputes.  The jury can only be expected to work through so many asserted claims; and I certainly would hope but am not at this time ordering that the number of asserted claims get reduced further as we proceed to trial.  I'm not requiring that at this time.

I recognize I have an obligation before the case is submitted to the jury to construe whatever claim terms are meaningfully in dispute at that point, so if it turns out that further claims construction is necessary later in the case, if need be, we'll do that.

My hope further is that the issues of invalidity and infringement for all the claims at issue in this case can be resolved in a single trial.  If it turns out that that becomes impossible because somehow the case remains too large, then we'll just have to just deal with that further down the road.

So that's my ruling on those first two related disputes.

With respect to plaintiff's request to modify the scheduling order to the extent the scheduling order bifurcates this case as between essentially liability issues

and damages issues, I'm denying plaintiff's request.  It's very explicit, of course, and not disputed that it is explicit in the scheduling order by Judge Farnan that the bifurcation provision is there.  The dispute was flagged by Judge Farnan in the cover letter that accompanied the parties' proposed scheduling orders.  It's also flagged for Judge Farnan in the proposed scheduling orders themselves.

I have every reason to believe that Judge Farnan gave careful consideration to what was before him, and I'm certainly not inclined to revisit his decision.  There was no timely motion for reconsideration.

The letter was filed and certainly had a great deal of argument in it, but I must presume that because either what happened was because it wasn't filed as a motion, it was perhaps overlooked by Judge Farnan, and that would be understandable since it wasn't filed as a motion, and a motion today would be untimely, or, alternatively, it was reviewed by Judge Farnan and he determined that it lacked merit.  Either way, I'm not revisiting his decision and the case will remain bifurcated.

Finally, on the dispute as to the depositions of the inventors, this is a difficult call but I'm ultimately going to rely on the language that is in the parties' agreement:  two seven-hour days.  There is nothing in that language that says that the two days have to be consecutive

or even near one another, and I'm not persuaded that the interpretation that Google puts on that language is one that will unduly and unfairly burden the plaintiff.

There is lots of time left in discovery to allow for Google's interpretation to be implemented by depositions that don't happen to be right next to each other, so I'm ruling for Google on that one.

I would like to or I am ordering that the parties meet and confer as a result of my rulings today and submit to me your hopefully joint proposal for what this does to the scheduling order and get that to me within a week of today; and then, as I say, we'll take a look at that and we'll get you a Markman hearing date after that.

No further argument, but I want to make sure I was clear in what I have ruled here.

Any questions, Mr. Nelson?

MR. NELSON:  No, your Honor.

THE COURT:  And Mr. Perlson?

MR. PERLMAN:  No further questions, your Honor. Thank you.

THE COURT:  Okay.  Thank you, counsel. Good-bye.

(Telephone conference ends at 10:52 a.m.)