**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PERSONALIZED USER MODEL, L.L.P., Plaintiff, v. GOOGLE INC., Defendant. | ) | C.A. No. 09-525-LPS **JURY TRIAL DEMANDED** |
| GOOGLE, INC. Counterclaimant, v. PERSONALIZED USER MODEL, LLP and YOCHAI KONIG Counterdefendants. | ) | **PUBLIC VERSION** |

**LETTER TO THE HONORABLE LEONARD P. STARK**
**FROM RICHARD L. HORWITZ**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Google Inc.*

Enclosures
cc: Clerk of the Court (via hand delivery)
Counsel of Record (via electronic mail)

Dated: February 21, 2011
**PUBLIC VERSION**
Dated: February 28, 2011
1002160 / 34638

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

February 21, 2011

The Honorable Leonard P. Stark
United States District Court
844 King Street
Wilmington, DE 19801

**PUBLIC VERSION**

**Re: *Personalized User Model, LLP v. Google Inc.*, C.A. No. 09-00525-LPS**

Dear Judge Stark:

Defendant Google Inc. ("Google") respectfully files this letter brief in response to Plaintiff Personalized User Model, LLC's ("PUM's") February 18, 2011 letter requesting an order (1) requiring Google to give PUM's expert access to Google's source code at Google's campus, and (2) requiring Google to produce a 30(b)(6) witness on damages and willfulness.

## I. PUM Should Be Required To Inspect Source Code Following The Procedures In The Protective Order.

[redacted][1] (Ex. A, ¶¶ 9, 8-16.) *See Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259-60 (S.D.N.Y. 2008) (acknowledging sensitivity of Google's source code and denying motion to compel). Given the sensitive nature of source code, courts routinely provide for special procedures for dealing with discovery thereof. (*See e.g.* Ex. F (default rule for inspecting source code discovery for Judge Robinson).

---

[1] Given the short time to respond to PUM's letter, Google submits as Exhibit A the 2008 declaration of Amit Singhal from another litigation that describes the importance of Google's source code, the harm Google would suffer from its disclosure, and the special protection given to it even within Google. While statements regarding the critical and sensitive nature of Google's source code remain accurate, certain details in the declaration are not up to date. [redacted]

PUM's contention that Google's insistence that PUM comply with the Protective Order is contrary to Rule 34 does not make sense. The Protective Order expresses the parties' agreement as to how production of source code pursuant to Rule 34 is to be done. Rather, it is PUM that is trying to turn discovery on its head. The Protective Order includes that source code shall be inspected on a standalone computer at the producing party's counsel's offices. (D.I. 38, ¶ 19.) Google undertook the burden to produce the relevant source code and made it available to PUM under the agreed procedure. The parties have followed these procedures for 8+ months during which time Google has made [redacted] source code [redacted] available for inspection [redacted]. Google has also expended a great deal of time making additional code available and responding to PUM's inquiries regarding files referenced in the inspected code.

If upon review of the produced files, review of the voluminous technical and other documents produced in this matter, and after review of the depositions of various Google engineers, PUM believes additional code is relevant, it should have asked for it pursuant to the agreed procedures. In the parties meet and confers, however, Google asked PUM to identify the files it believes are "missing" (Ex. C) and PUM never has—even in its brief. It is unfair for PUM to demand access to Google's entire code base when it has refused to explain what it thinks is missing so that Google can try to remedy the purported problem under the agreed procedures.

[redacted]

PUM also complains that Google produced a mixture of test code, obsolete code, and launched code and PUM cannot distinguish them. [redacted] While PUM implies Google delayed in responding to Interrogatory No. 18, the interrogatory seeks detailed information about [redacted] source code files, which is not available in readily accessible form at Google. (*Id.*) Nevertheless, Google is attempting to provide as much of the requested information as it can as quickly as it can, and has already provided some of the requested information.

---

2 [redacted] The inter-related nature of source code is also something PUM must have known before the parties negotiated and agreed to the rules for source code production under the Protective Order .

Finally, PUM argues that allowing Pazzani access to Google's code at Google is more efficient than the system under the Protective Order and somehow reduces security risks. It certainly does not reduce security risks because PUM is effectively seeking unfettered access to all of Google's code. Any claimed increased efficiency is outweighed by the need to protect Google's "crown jewels." Nor would the relief PUM seeks be more efficient. PUM asks to allow Pazzani to inspect code <u>at Google</u> and <u>then</u> identify the files he wants and have them made available on the inspection computer in New York for him to inspect there. This is not streamlining anything.

In sum, while PUM has likely not been able to find evidence of infringement in its over 100 hours of source code inspection, that does not justify PUM's requested fishing expedition into Google's most valuable asset. This Court should deny PUM's request and require PUM to continue inspecting code consistent with the Protective Order.

## II. PUM's Request for Witnesses on 30(b)(6) Topics Should be Denied.

PUM requests a witness on topics 3-6, which concern Google's acquisition of Kaltix in September 2003. The Kaltix acquisition, which occurred two years before PUM's first patent even issued, has no relevance to this case. In fact, PUM has made no showing—citing to Jeh or anything else—that the Kaltix technology was ever even implemented at Google or that PUM's allegations of infringement concern anything developed at Kaltix. This alone demonstrates that PUM's argument that these topics are somehow relevant to secondary considerations of non-obviousness should be rejected. At most, PUM would be entitled to discovery regarding the specific accused functionalities identified in its infringement contentions to show secondary considerations of non-obviousness. *Teles AG Informationstechnologien v. Quintum Technologies, LLC*, C.A. No. 06-197-SLR-LPS, 2009 U.S. Dist. LEXIS 103790, *10-11 (D. Del. Oct. 30, 2009) (limiting discovery of financial data to the products plaintiff accused as part of its infringement contentions). Even if Kaltix were somehow related to something PUM accused beyond PUM's asserted vague notion that both involved personalization, in *Teles* the Court limited plaintiff's discovery on commercial success to the year before the accused functionality was introduced through two years after it was introduced. *Id.* at *12. Google's acquisition of Kaltix was earlier than that time frame by at least one year if not more. Thus, the information sought cannot be relevant to secondary considerations of non-obviousness.

Through topics 9-10, PUM also seeks information regarding the steps Google has taken since learning of the patents-in-suit to avoid infringing them, and the steps Google has taken since learning of the patents-in-suit to assess whether its products infringe them. Initially, such information is privileged and/or attorney work product so there is no point in providing witnesses on it. Even if discoverable, however, this topic would at best relate to willfulness, discovery as to which has been bifurcated. Although its explanations as to why this premature discovery should be allowed has evolved over time, PUM now argues the Court's bifurcation order should be ignored here because it believes Google "will tell a story at trial as to why it believes it was sued." If PUM can take willfulness discovery now based on such vague conjecture, it would create an exception that swallows the rule—here bifurcation. Tellingly, PUM does not cite any authority suggesting that its argument justifies premature discovery on willfulness.

For the foregoing reasons, Google respectfully requests that this Court deny PUM the relief sought in its February 18, 2011 letter brief.

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz (#2246)

RLH/nmt
1002160/34638

Enclosures
cc: Clerk of the Court (via hand delivery)
Counsel of Record (via electronic mail)