# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PERSONALIZED USER MODEL, L.L.P., Plaintiff, v. GOOGLE INC., Defendant. | ) | C.A. No. 09-525-LPS **JURY TRIAL DEMANDED** |
| GOOGLE, INC. Counterclaimant, v. PERSONALIZED USER MODEL, LLP and YOCHAI KONIG Counterdefendants. | ) | **PUBLIC VERSION** |

**GOOGLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT COUNTERCLAIM, ITS DECLARATION OF OWNERSHIP COUNTERCLAIM, AND ITS AFFIRMATIVE DEFENSE OF LACK OF STANDING**


OF COUNSEL:

Charles K. Verhoeven
David A. Perlson
Eugene Novikov
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California St.
San Francisco, CA 94111
Tel.: (415) 875-6600

Andrea Pallios Roberts
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Tel.: (650) 801-5000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Google Inc.*


Dated: February 21, 2011
**PUBLIC VERSION: FEBRUARY 28, 2011**
1003157/ 34638

# TABLE OF CONTENTS

**Page**


NATURE AND STAGE OF THE CASE ..... 1

SUMMARY OF ARGUMENT ..... 1

STATEMENT OF FACTS ..... 2

I. KONIG HAD A DUTY TO DISCLOSE AND TRANSFER TO SRI ANY INVENTIONS CONCEIVED OR MADE DURING HIS EMPLOYMENT. ..... 2

II. THE INVENTION IN THE PATENTS-IN-SUIT RELATES TO SRI'S BUSINESS AND RESULTED FROM KONIG'S WORK FOR SRI. ..... 4

III. PUM REPEATEDLY ASSERTS THAT KONIG CONCEIVED THE INVENTION IN THE PATENTS-IN-SUIT [redacted], *WHILE KONIG WAS STILL EMPLOYED BY SRI.* ..... 5

IV. [redacted] ..... 7

V. PUM ATTEMPTS TO MANUFACTURE A FACT DISPUTE AS TO CONCEPTION. ..... 8

LEGAL STANDARD ..... 9

ARGUMENT ..... 10

I. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT KONIG BREACHED HIS EMPLOYMENT AGREEMENT WITH SRI. ..... 10

A. Konig's Employment Agreement Required Him to Disclose His Invention To SRI and Execute Documents to Effect Transfer of Ownership of the Invention to SRI. ..... 10

B. The Invention Does Not Fall Within the § 2870 Exception Because It Relates to SRI's Business or Actual or Demonstrably Anticipated Research and Development and Resulted from Konig's Work for SRI. ..... 11

1. The Invention in the Patents-in-Suit Resulted from Konig's Work for SRI. ..... 12

2. The Invention in the Patents-in-Suit Relates to SRI's Business and/or SRI's Research and Development. ..... 13

C. The Invention Was Conceived During Konig's Employment at SRI ..... 14

1. PUM Twice Asserted That the Invention Was Conceived During Konig's Employment at SRI .......... 14

2. PUM's Fourth Supplemental Response, Recanting the Asserted Conception Date, Does Not Raise a Genuine Issue of Material Fact. .......... 15

(a) PUM's About-Face on Conception Should Be Disregarded as a Sham. .......... 15

3. Even if It *Is* Considered, the Fourth Supplemental Interrogatory Response Does Not Create a Genuine Issue of Material Fact. .......... 17

II. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT GOOGLE IS A CO-OWNER OF THE PATENTS-IN-SUIT. .......... 19

III. PUM'S PATENT INFRINGEMENT COMPLAINT SHOULD BE DISMISSED BECAUSE PUM LACKS STANDING TO SUE. .......... 20

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*AT&T v. Integrated Network Corp.*,
972 F.2d 1321 (Fed. Cir. 1992) ........ 18

*Abdelhamid v. Fire Ins. Exch.*,
182 Cal. App. 4th 990 (3d Dist. 2010) ........ 10

*Alvarado v. J.C. Penney Co., Inc.*,
768 F. Supp. 769 (D. Kan. 1991) ........ 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 10

*Applera Corp. v. MP Biomedicals, LLC*,
173 Cal. App. 4th 769 (4th Dist. 2009) ........ 10

*Barefoot Architect, Inc. v. Bunge*,
2011 WL 121698 (3d Cir. Jan. 14, 2011) ........ 9, 10

*Cadence Design Sys., Inc. v. Bhandari*,
2007 WL 3343085 (N.D. Cal. Nov. 8, 2007) ........ 11, 13

*Collins & Aikman Corp. v. Stockman*,
C.A. No. 07-265-SLR-LPS, 2010 WL 184074 (D. Del. Jan. 19, 2010) ........ 10

*Cubic Corp. v. Marty*,
185 Cal. App. 3d 438 (4th App. Dist. 1986) ........ 12, 13

*EBC, Inc. v. Clark Bldg. Systems, Inc.*,
618 F.3d 253 (3rd Cir. 2010) ........ 16

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998) ........ 20

*Hercules Glue Co. v. Litooy*,
25 Cal. App. 2d 182 (1938) ........ 17

*Kennedy v. Allied Mutual Insurance Co.*,
952 F.2d 262 (9th Cir. 1991) ........ 16

*Prince v. Claussen*,
173 F.3d 864 (Table), 1999 WL 152282 (10th Cir. March 22, 1999) ........ 17

*Solvay S.A. v. Honeywell Intern., Inc.*,
622 F.3d 1367 (Fed. Cir. 2010) ........ 17

**Statutes**

35 U.S.C. § 262 .......... 20

Cal. Civ. Code § 1636 .......... 18

Cal. Civ. Code § 1641 .......... 17

Cal. Civ. Code § 2870 .......... *passim*

Fed. R. Civ. P. 56(c) .......... 9

## NOTE ON CITATIONS

Unless otherwise specified all exhibits are attached to the Declaration of Andrea Pallios Roberts.

Exhibits 1, 2, 22, and 23 are documents produced to Google by SRI International in response to Google's December 20, 2010 subpoena for documents.

Exhibits 3-5 are printouts of web pages from SRI International's website.

Exhibits 6 and 16 are excerpts from the deposition transcripts of Yochai Konig and Roy Twersky, respectively.

Exhibits 7-9 are technical documents of Utopy, Inc. describing Utopy's "Personal Web" technology.

Exhibits 10, 12-15, and 21 are various versions of PUM's responses to Google's First Set of Interrogatories, including PUM's original, First Supplemental, Second Supplemental, Third Supplemental, and Fourth Supplemental Responses to Google's Interrogatory No. 1.

Exhibit 11 is a document purporting to assign U.S. Patent Application No. 09/597975 from Yochai Konig, Roy Twersky, and Michael Berthold to Utopy, Inc.

Exhibits 17-20 comprise written correspondence between PUM's counsel and Google's counsel relating to Google's requests to: (1) amend its Answer to assert ownership of the patents-in-suit; and (2) move for early summary judgment on the ownership issue.

Exhibit 24 is a Wikipedia article on "Machine Learning."

Exhibits 25-27 are true and correct copies of the patents-in-suit.

## Nature and Stage of the Case

Plaintiff Personalized User Model, LLP ("PUM") accuses Google of infringing three patents: U.S. Patent No. 6,981,040 ("the 040 patent"), U.S. Patent No. 7,320,031 ("the '031 patent"), and U.S. Patent No. 7,685,276 ("the '276 patent") (collectively the "patents-in-suit").[1] Google filed its operative Amended Answer and Counterclaims on February 4, 2011, which added, among other things, a counterclaim for breach of contract against one of the named inventors, Yochai Konig, and a counterclaim for declaratory relief that Google is a co-owner of the patents-in-suit. (D.I. 180). Google files the present motion for summary judgment on its breach of contract counterclaim, its declaration of ownership counterclaim, and for dismissal of this case because, as co-owner, Google has a right to practice the invention and PUM lacks standing to bring suit. There is no genuine dispute as to the facts that give rise to Google's breach of contract and declaration of ownership counterclaims, or to PUM's resulting lack of standing.

## Summary of Argument

PUM's interrogatory responses in this action have stated that named inventor Yochai Konig — whom PUM introduced at the claim construction hearing as a representative of PUM — conceived of the invention in the patents-in-suit [redacted] while employed by SRI International ("SRI"). Under his Employment Agreement with SRI, Konig was obliged to assign to SRI any inventions conceived or made during his employment. While the Employment Agreement provided an exception to this duty if the inventions were not related to Konig's work at SRI or to SRI's business or present or demonstrably anticipated research, the patents-in-suit do not fall within that exception. Rather, as shown by Konig's own testimony and contemporaneous documents from both SRI and Utopy (the company through which Konig sought to commercialize the patents), the

[1] Although PUM has stated in written correspondence that it does not intend to continue asserting the '031 patent against Google, the '031 patent presently still appears in PUM's Complaint.

patents-in-suit relate to SRI's business and stemmed directly from Konig's work at SRI. In breach of his contractual obligations, however, Konig did not transfer the invention in the patents-in-suit to SRI.

[redacted] Google is now a rightful co-owner of the asserted patents, with a right to practice these patents. PUM also lacks standing to assert these patents against Google, as Google obviously will not join in PUM's infringement case. Accordingly, summary judgment is appropriate.

In an effort to create a genuine issue of material fact where none exists, PUM recently sought to backtrack from its repeated assertion in prior interrogatory responses of a [redacted] conception date (during Konig's SRI employment). In a supplemental response, served just days after Google filed its Amended Answer asserting ownership of the patents and after Google informed PUM that it intended to seek early summary judgment on the ownership and standing issues, PUM alleged that the patents were not conceived until after Konig had left SRI, [redacted]. This "sham" interrogatory response was created solely in an attempt to manufacture a dispute as to the ownership question, and should be rejected outright. In any event, even if considered, the interrogatory response does not raise a genuine issue of material fact as to "conception" of the patents as that term is used in the Employment Agreement between Konig and SRI.

## Statement of Facts

### I. KONIG HAD A DUTY TO DISCLOSE AND TRANSFER TO SRI ANY INVENTIONS CONCEIVED OR MADE DURING HIS EMPLOYMENT.

From April 8, 1996 through August 6, 1999, Konig, a co-inventor of the patents-in-suit and a limited partner of PUM, was employed by SRI. (*See* Ex. 1-2; Stringer-Calvert Declaration.) Based in Menlo Park, California, SRI conducts client-sponsored research and development for businesses,

government agencies, and private foundations. (Ex. 3 - *http://www.sri.com/about/*).[2] SRI's research and development focuses heavily on the areas of computers and artificial intelligence. (*See* Ex. 4 - *http://www.sri.com/focus_areas/computing.html*; Ex. 5 - *http://www.ai.sri.com/about*).

[redacted]

Konig's work at SRI regarding machine learning was manifestly related to the patents-in-suit. As PUM has explained, "the inventions employ sophisticated machine learning (*i.e.*, a "learning machine") to move beyond simple information filtering to generalization, thereby enabling prediction of the user's interests based on information known about the user." (D.I. 119 - Claim Construction Brief at 2 (citing '040 patent at 4:2-6:2 (emphasis added).) Every asserted claim requires a "learning machine." (*See generally* D.I. 39, '040 patent, '031 patent, '276 patent).[3] The asserted patents also discuss using "speech recognition software" in the preferred embodiment. ('040 patent, 18:5; '031 patent, 18:17; '276 patent, 17:58.)

Konig's employment agreement with SRI included a provision requiring Konig to disclose and transfer to SRI any "discoveries, improvements, and inventions" that are "conceived or made by me" during the time of his employment. (Ex. 1; Stringer-Calvert Declaration.) It does state that Konig's obligation to disclose and transfer his inventions to SRI "does not apply to an invention which fully qualifies for the exclusion under Section 2870 of the California Labor Code." *Id.* The Employment Agreement also attached § 2870, which provides:

> Any provision in an employment agreement which provides that an employee shall assign or transfer any of his or her rights in an invention to his or her employer shall

---

[2] Unless otherwise specified, all Exhibits are attached to the Declaration of Andrea Pallios Roberts filed concurrently herewith.

[3] The patents-in-suit are attached as exhibits to PUM's First Amended Complaint (D.I. 39).

> not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (a) which does not relate (1) to the business of the employer or (2) to the employer's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by the employee for the employer.

(*Id.*); Cal. Labor Code § 2870. In other words, an invention is excluded from the Employment Agreement only if (a), (b), (c1), and (c2) in the following are true: (a) no equipment, supplies, facilities, or trade secret information of the employer was used; (b) the invention was developed entirely on the employee's own time; (c1) the invention does not relate to either (i) the business of the employer or (ii) the employer's actual or demonstrably anticipated research or development; and (c2) the invention does not result from any work performed by the employee for the employer. None of these exceptions apply to the patents in suit.

## II. THE INVENTION IN THE PATENTS-IN-SUIT RELATES TO SRI'S BUSINESS AND RESULTED FROM KONIG'S WORK FOR SRI.

Documents relied on by PUM to show the conception of the patents-in-suit indicate that the patented invention uses technology that was the subject of Konig's work at SRI – and thus does not fall within the § 2870 exception. The patents-in-suit state: "The present invention, referred to as Personal Web, provides automatic, personalized information and product services to a computer user." ('040 patent at 7:4-6; see also '276 patent at 7:6-8 (same) (emphasis added).) [redacted]

> Utopy applies its bleeding-edge expertise in stochastic modeling and machine learning technologies drawn from speech recognition and speaker verification research to a new and relatively unexplored problem within the search and Information Retrieval (IR) tasks, namely Personal Search. This combination of

(Ex. 7 at 3 (emphasis added)). [redacted]

REDACTED

(Ex. 8, at 42222; Ex. 9, at PUM 42165; *see also* Ex. 10 - Eleventh Supplemental Responses to Google's First Set of Interrogatories (citing PUM 42214 and PUM 42165.)) Despite the direct relationship between the Personal Web of the patents and Konig's work at SRI, Konig did not transfer the inventions of the patents-in-suit to SRI. Rather, Konig assigned them to Utopy on June 15, 2000. (Ex. 11.)

## III. PUM REPEATEDLY ASSERTS THAT KONIG CONCEIVED THE INVENTION IN THE PATENTS-IN-SUIT [redacted] *WHILE KONIG WAS STILL EMPLOYED BY SRI.*

On March 8, 2010, PUM served its original response to Google's Interrogatory No. 1, which sought dates of conception and reduction to practice for the asserted claims and documentation to support such dates. PUM's original response did not provide substantive information regarding conception or reduction to practice, stating only that PUM would produce documents related thereto. (Ex. 12.) After Google requested that PUM supplement its response, PUM did so on September 9, but still did not provide a specific conception or reduction to practice date. Rather, PUM asserted that "[redacted]." (Ex. 13.)

Google again requested that PUM supplement its response to Interrogatory No. 1 to provide actual dates of both conception and reduction to practice. (Ex. 14.) In response, PUM served its Second Supplemental Response on October 8, 2010, which finally provided a date by which the patents-in-suit were conceived and reduced to practice – "[redacted]":

**REDACTED**

(Ex. 15) (emphasis added).

On the evening of December 1, 2010, hours before Konig's deposition, PUM served yet another supplementation to Interrogatory No. 1. (Ex. 10.) PUM's Third Supplemental Response repeated the "[redacted]" conception date:

**REDACTED**

(*Id.*) (emphasis added). [redacted]

[redacted]

The issue of patent ownership also arose at Konig's deposition. (Ex. 6 at 70-71 (discussing Konig's SRI Employment Agreement and whether Konig developed any of the claimed ideas while at SRI).) Nonetheless, as demonstrated by counsel's discrediting of Konig's testimony, PUM maintained its position that the invention in the patents-in-suit was conceived and reduced to practice [redacted].[4] Indeed, PUM filed the interrogatory response asserting this [redacted] date with the Court on January 19, as an exhibit to Konig's deposition, after the January 11 Claim Construction hearing and without making any indication that anything in the interrogatory response was incorrect. (D.I. 161, Ex. D – Konig Depo. Ex. 1.)

**IV.** [redacted].

[redacted]

[4] PUM's motivation in doing so was plainly to seek the earliest possible conception date in order to eliminate as much prior art as possible – before recognizing that this early conception date would effectively grant Konig's ownership rights to SRI. Only after recognizing this ownership problem did PUM hurriedly amend its interrogatory response to assert a later, [redacted] conception date.

[redacted]

## V. PUM ATTEMPTS TO MANUFACTURE A FACT DISPUTE AS TO CONCEPTION.

[redacted]. (Roberts Dec., ¶ 18.) By letter the same day, Google sought to amend its answer to assert the defenses and counterclaims currently at issue. (Ex. 17.) PUM requested to see the proposed amended answer, which Google provided on January 27, 2010. (Ex. 18.) Google's Amended Answer discussed and specifically relied on PUM's interrogatory responses that asserted the [redacted] conception date for the patents-in-suit. (D.I. 180) PUM stipulated to the amendment on February 1. (D.I. 177.) At no time before Google filed its Amended Answer did PUM indicate that its interrogatory response stating a conception date [redacted] was incorrect.

On February 3, Google requested that PUM stipulate to Google filing an early motion for summary judgment on patent ownership and standing issues. Google noted that, as the Amended Answer makes clear, there are no genuine issue of material fact as to the threshold issues of ownership and standing, making these issues appropriate for early resolution on summary judgment. (Ex. 19.) After Google followed up on this request on February 7, PUM responded on February 8 claiming it needed additional detail regarding the grounds for summary judgment. Google responded the same day. (Ex. 20.)

That night, PUM served its Fourth Supplemental Response to Interrogatory No. 1. The new response alleged that "[redacted]

[redacted].” It goes on to state: “[redacted].”[5] (Ex. 21.))

This interrogatory response contradicts Twersky’s sworn testimony [redacted]. (Ex. 16 at 108:7-25) [redacted]. (*Id.*)

The next day PUM informed Google that it would oppose Google’s request to file an early motion for summary judgment.

**Legal Standard**

Summary judgment should be granted when the record “shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c); *Barefoot Architect, Inc. v. Bunge*, 2011 WL 121698, *2 (3d Cir. Jan. 14, 2011). “While ‘[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor’ in determining whether a genuine factual question exists, summary judgment should not be denied unless there is sufficient evidence for a jury to reasonably find for the

[5] PUM’s Fourth Supplemental Response states that it provided the same conception date, [redacted], that “PUM contended in its First Supplemental Response.” (Ex. 21) This is incorrect. PUM’s Fourth Supplemental Response states that the inventions were conceived “[redacted].” By contrast, the First Supplemental Response stated that “[redacted].” (Ex. 13.)

nonmovant." *Barefoot*, 2011 WL 121698 at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252.

## Argument

## I. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT KONIG BREACHED HIS EMPLOYMENT AGREEMENT WITH SRI.

"The standard elements of a claim for breach of contract are (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Abdelhamid v. Fire Ins. Exch.*, 182 Cal.App.4th 990, 999 (3d Dist. 2010).[6] Here, there is no genuine issue of material fact on any of these elements. The Employment Agreement between SRI and Konig is a valid contract. SRI performed this contract by employing Konig. Konig failed to transfer the patents-in-suit to SRI in breach of that agreement. SRI, and now Google, were damaged by Konig's failure to transfer the patents-in-suit, by deprivation of the rights to the patents.[7] Thus, summary judgment is appropriate as to Konig's breach of his Employment Agreement.

### A. Konig's Employment Agreement Required Him to Disclose His Invention To SRI and Execute Documents to Effect Transfer of Ownership of the Invention to SRI.

Konig's Employment Agreement provided that Konig must "promptly disclose to SRI all discoveries, improvements, and inventions, including software, conceived or made" by him during his employment and "execute such documents, disclose and deliver all information and data, and to

---

[6] In determining which state's law governs a breach of contract action, "the Court looks to the law of the state with the greatest connection to the contract." *Collins & Aikman Corp. v. Stockman*, C.A. No. 07-265-SLR-LPS, 2010 WL 184074, *4 (D. Del. Jan. 19, 2010). Here, Konig and SRI were both California citizens and the contract was signed in California. Thus, California law governs.

[7] [redacted]," Stringer-Calvert Dec., Ex. A at § 4.2(c), giving Google has standing to bring this breach of contract suit. *See Applera Corp. v. MP Biomedicals*, LLC, 173 Cal.App.4th 769, 786 (4th Dist. 2009).

do all things which may be necessary, or in the opinion of SRI reasonably desirable, in order to effect transfer of ownership in or to impart a full understanding of such discoveries, improvements and inventions to SRI or its nominee and no other." (Ex. 1; Stringer-Calvert Dec.) It is undisputed that he did neither – he did not disclose the invention in the patents-in-suit to SRI and he did not execute such documents to effect transfer of ownership of the invention to SRI or its nominee.

**B. The Invention Does Not Fall Within the § 2870 Exception Because It Relates to SRI's Business or Actual or Demonstrably Anticipated Research and Development and Resulted from Konig's Work for SRI.**

Konig's Employment Agreement states that Konig's obligation to disclose and transfer his inventions to SRI "does not apply to an invention which fully qualifies for the exclusion under Section 2870 of the California Labor Code." (Ex. A; Stringer-Calvert Dec.) Section 2870 provides:

> Any provision in an employment agreement which provides that an employee shall assign or transfer any of his or her rights in an invention to his or her employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (a) which does not relate (1) to the business of the employer or (2) to the employer's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by the employee for the employer.

Cal. Labor Code § 2870. "[T]here are three independent scenarios in which an agreement assigning an invention to an employer is enforceable under section 2870: (1) The invention was developed using the employer's time or resources; or (2) The invention relates to the employer's business or actual or demonstrably anticipated research or development; or (3) The invention resulted from work performed by the employee for the employer." *See Cadence Design Sys., Inc. v. Bhandari*, 2007 WL 3343085, *5 (N.D. Cal. Nov. 8, 2007). Konig "bears the burden of establishing his invention comes within Labor Code section 2870." *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438, 451 (4th App. Dist. 1986) (stating employee bears burden); *Cadence Design*, 2007 WL 3343085 at *5 (same).

Konig cannot meet his burden. The patents both (1) resulted from Konig's SRI work; and (2) relate to SRI's "business or actual or demonstrably anticipated research or development."

1. The Invention in the Patents-in-Suit Resulted from Konig's Work for SRI.

The undisputed facts demonstrate that the patents-in-suit resulted from Konig's work for SRI. Konig's testimony, as well as documents and emails produced by SRI, establish that Konig worked on machine learning technology. Machine learning is central to all three patents. (*See* '040 patent, claim 1; '031 patent, claim 1; 276 patent, claim 1.) Indeed, every asserted claim requires the use of a learning machine. ('040 patent, claims 1 and 32; '276 patent, claims 1 and 23.)

Moreover, Konig's machine learning work focused on speech recognition, also called speaker verification, technology. As detailed above, the [redacted] documents cited by PUM as showing conception state that [redacted] (Ex. 8 at 42222; Ex. 9; *see also* Ex. 10 - Eleventh Supplemental Responses to Google's First Set of Interrogatories (citing PUM 42214 and PUM 42165.) [redacted] (Ex. 7 at 3 (emphasis added).) The patents' shared specification also discusses the use of "speech recognition software" in the preferred embodiment. ('040 patent, 18:50).

A closer look at Konig's work at SRI and the patents-in-suit further demonstrates that the claimed invention derived from Konig's work at SRI. For example, documents and emails produced by SRI show that Konig's work "was centered around a data-driven approach for feature extraction for pattern recognition . . . we optimize the feature extraction process to increase the posterior probability of the correct sentence . . ." (Ex. 22 - e-mail from Yochai Konig to Andreas Stolcke

(Jan. 30, 1999); Stringer-Calvert Dec.). The feature extractor he was developing was "data-driven in the sense that the extractor parameters are automatically estimated from (development) data, rather than being constrained to perform a specific function (e.g. spectral analysis)." (Ex. 23 - email from Yochai Konig to Mitch Weintraub (June 8, 1998); Stringer-Calvert Dec.).

The '040 patent similarly discloses: "Personal Web 12 stores parameters that define a User Model 13 for each user, and the parameters are continually updated based on monitored user interactions while the user is engaged in normal use of a computer." ('040 patent, 8:46-50.) Claim 1 discloses a method that includes the step of "estimating parameters of a learning machine . . . wherein the parameters are estimated in part from the user-specific data files." Claim 11 discloses that the claimed method can be used to "estimat[e] a posterior probability P(u/d,q) that the document d is of interest to the user u, given a query q submitted by the user." Thus, there can be no genuine dispute that the invention relates to Konig's work at SRI.

2. The Invention in the Patents-in-Suit Relates to SRI's Business and/or SRI's Research and Development.

The invention in the patents-in-suit also "relate to" SRI's business, actual or demonstrably anticipated research, and/or development. Courts construe "relate to" in § 2870 broadly. *Cadence Design*, 2007 WL 3343085 at *5 (citing *Cubic*, 185 Cal. App. 3d 438). Initially, the nature of Konig's own work described above demonstrates that the patents-in-suit relate to SRI's business and actual or demonstrably anticipated research and development.

Further, SRI's website discloses that its research and development focuses heavily on computers and artificial intelligence. (Ex. 5.) Its Artificial Intelligence Center, founded in 1966:

> has been a pioneer and a major contributor to the development of computer capabilities for intelligent behavior in complex situations. Its objectives are to understand the computational principles underlying intelligence in man and machines and to develop methods for building computer-based systems to solve problems, to communicate with people, and to perceive and interact with the physical world.

(*Id.*) Just as computers and artificial intelligence are a focus of SRI's research and development, they are also a focus of the patents-in-suit.

Claim 1 of the '040 patent discloses "estimating parameters of learning machine" and "applying the identified properties of the document to the learning machine." ('040 patent, claim 1(c), (e)). The '031 and '276 patents have similar or identical "learning machine" language in their claims. ('031 patent, claim 1(c), (e) (disclosing identical "learning machine" elements as Claim 1 of the '040 patent); '276 patent, claim 1(f) (disclosing the step of "applying the identified properties of the retrieved document to the user-specific learning machine."). By virtue of this "learning machine," the patents-in-suit are squarely within the field of artificial intelligence. Indeed, the Wikipedia entry for "Machine Learning," upon which PUM previously relied during claim construction, states that machine learning is "a branch of artificial intelligence." http://en.wikipedia.org/wiki/Machine_learning[8]

As the invention in the patents-in-suit related to the business of SRI or its actual or demonstrably anticipated research or development, and resulted from Konig's work performed for SRI, the invention is not exempt from the Employment Agreement under Labor Code § 2870.

### C. The Invention Was Conceived During Konig's Employment at SRI

#### 1. PUM Twice Asserted That the Invention Was Conceived During Konig's Employment at SRI.

As detailed above, after requests from Google to identify a definitive date of conception and reduction to practice, PUM's Second and Third Supplemental Responses to Interrogatory No. 1 state that "[redacted]

[8] Given the evolving nature of Wikipedia, the Machine Learning entry actually changed since PUM submitted it to the Court on December 13, 2010. (Ex. 24.) The version PUM submitted states "[a]rtificial intelligence is a closely related field" to machine learning as are "probability theory and statistics" and "pattern recognition," which are also the subject-matter of the patents-in-suit. (D.I. 133, Ex. 8)

[redacted]." (Ex. 15 (October 8, 2010) at 3; Ex. 10 (December 1, 2010)) at 5 (emphasis added). The Third Supplemental Response was served after "[redacted]" with Konig, [redacted]. [redacted] (Ex. 16 at 108:7-25).

[redacted] Again, the patents-in-suit refer to the "the present invention" as "Personal Web" ('040 patent at 7:4-6), the same subject matter of these presentations from the time period that Konig was employed at SRI.

2. PUM's Fourth Supplemental Response, Recanting the Asserted Conception Date, Does Not Raise a Genuine Issue of Material Fact.

(a) PUM's About-Face on Conception Should Be Disregarded as a Sham.

PUM will likely attempt to create an issue of fact by backing away from its twice asserted "[redacted]" date and assert, as it does in its Fourth Supplemental Response, that the inventions were conceived "[redacted]." (Ex. 21.) This interrogatory response, and any similar declaration PUM might file to try to undo its prior interrogatory responses, should be dismissed as a sham, concocted solely in an attempt to defeat the present motion.

It is self evident that PUM's about-face on conception is a sham that seeks to create an issue of fact. PUM served this supplemental response only after Google notified PUM that it would be moving for summary judgment on the issue of ownership. (Ex. 20.) The interrogatory response contradicts Twersky's sworn testimony that the invention was conceived [redacted]. (Ex. 16 at 108:7-25). [redacted]

[redacted]. (Ex. 6 at 253:7-19). [redacted]. (*Id.* at 153:12-17).

It is well-established that a court may disregard on summary judgment "sham" affidavits—affidavits contradicting previous testimony and prepared solely to support or oppose a motion. *See e.g.*, *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 268-70 (3rd Cir. 2010) (applying sham affidavit rule to exclude deposition errata that was a "sham"); *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266 (9th Cir. 1991). As the *EBC* Court explained:

> A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant.... [I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.

*EBC*, 618 F.3d at 269 (quoting *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007)). To the extent PUM seeks to provide a declaration from Konig or Twersky that mirrors PUM's Fourth Supplemental Interrogatory Response trying to undo PUM's and Konig's counsel's prior representations regarding conception, such a declaration should be rejected as a sham.

The underlying policy behind the "sham" affidavit rule—that parties cannot create or manufacture evidence to avoid summary judgment—also fully applies to the Fourth Supplemental Interrogatory Response. That PUM may submit "evidence" in the form of a supplemental interrogatory response on the eve of a summary judgment motion does not make that interrogatory response any less of a sham. Indeed, the Third Circuit's opinion in *EBC*, applying the sham affidavit rule to a deposition errata, suggests that the rule is not limited to declarations but applies to all *post hoc* amendments to discovery responses, including interrogatory responses. Other courts have

recognized as much. *See Prince v. Claussen*, 173 F.3d 864 (Table), 1999 WL 152282, *6 (10th Cir. March 22, 1999) ("we agree with the district court that the second interrogatories [responses] may be disregarded as an attempt to create a sham issue."); *Alvarado v. J.C. Penney Co., Inc.*, 768 F.Supp. 769, 776 (D. Kan. 1991) ("The circumstances here suggest that Penney is attempting to use the interrogatory answers and admissions to create a sham fact issue.")

### 3. Even if It *Is* Considered, the Fourth Supplemental Interrogatory Response Does Not Create a Genuine Issue of Material Fact.

Even if PUM's Fourth Supplemental Response *is* considered (which it should not be), this Response does not create a genuine issue of material fact as to whether or not the inventions were "conceived" while Konig was employed by SRI.

First, PUM's Fourth Supplemental Response states that "[redacted]." (Ex. 21 at 6 (emphasis added)). [redacted] PUM implies that the inventions had not yet been "conceived" as a matter of Federal patent law. *See Solvay S.A. v. Honeywell Intern., Inc.*, 622 F.3d 1367, 1377 (Fed. Cir. 2010) ("The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention.")

But the Employment Agreement, when properly read as a whole, did not limit the word "conceived" to a narrow, patent-law definition. *See* Cal. Civ. Code § 1641 (requiring that contracts be read as a whole, "each clause helping to interpret the other.") Konig's disclosure and transfer obligations extend to "*all* discoveries, improvements, and inventions . . . conceived or made," not merely those discoveries, improvements, and inventions which may be patentable. *See also Hercules Glue Co. v. Litooy*, 25 Cal. App. 2d 182, 185 (1st Dist. 1938) (finding that where employee

had "discovered the basic principle" of an invention during his time of employment, the invention was invented during his employment for purposes of assigning it to the employer under an Employee Assignment Agreement); *AT&T v. Integrated Network Corp.*, 972 F.2d 1321, 1324 (Fed. Cir. 1992) ("We disagree with the district court that conception of inventions, as used in the employment agreement, is solely a technical question of patent law . . . the contract may have used conception in its generic, broadest sense.") As *AT&T* noted, "when an invention was conceived [under an employment agreement] may be more a question of common sense than of patent law." *Id.*

[redacted] This further shows that the term "conceived" in the Employment Agreement should not be limited to "conception" under the patent laws. [redacted] See Cal. Civ. Code § 1636 ("a contract must be so interpreted as to give effect to the mutual intention of the parties").

While PUM's Fourth Supplemental Response to Interrogatory No. 1 also cites Konig's deposition testimony for the supposed proposition that the inventions of the patents-in-suit were not "conceived" by [redacted] (Ex. 21 at 6), [redacted] All these concepts appear throughout the patents in suit. *See*, *e.g.*, '040 patent, claim 1(e)

("estimating a probability P(u/d) that an unseen document d is of interest to the user u."); 040 patent, Claim 1(c) ("estimating parameters of a learning machine, wherein the parameters define a User Model specific to the user."); '276 patent at Abstract (disclosing the elements of "applying the document properties to the parameters of the User Model; and providing personalized services based on the estimated probability.").

[redacted]

In sum, there is no genuine dispute that Konig conceived of the invention in the patents-in-suit during his employment at SRI, and that this invention is not exempt under Cal. Labor Code § 2870. Accordingly, there is no genuine dispute that Konig breached his employment contract by failing to transfer this invention to SRI, and Google is entitled to summary judgment on this claim.

## II. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT GOOGLE IS A CO-OWNER OF THE PATENTS-IN-SUIT.

As discussed above, there can be no genuine dispute that SRI was the rightful owner of Konig's interest in the patents-in-suit, by virtue of Konig's contractual obligation to transfer his interest to SRI. [redacted] *See*

Stringer-Calvert Dec., Ex. A at § 4.1. Accordingly, Google is entitled to summary judgment perfecting this ownership interest by declaring that Google is a co-owner of the patents-in-suit.

Google's co-ownership of the patents means that PUM's infringement claims must be dismissed on the merits, since Google (as co-owner) has a right to practice the patents-in-suit and cannot be liable for infringing these patents. *See* 35 U.S.C. § 262 ("In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners.")

## III. PUM'S PATENT INFRINGEMENT COMPLAINT SHOULD BE DISMISSED BECAUSE PUM LACKS STANDING TO SUE.

Google's co-ownership of the patents-in-suit also means that PUM's infringement suit must be dismissed for lack of standing. As the Federal Circuit has held, "[a]n action for [patent] infringement must join as plaintiffs all co-owners." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998); *see also id.* at 1468 ("as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit.") Needless to say, Google does not consent to PUM's lawsuit, nor could Google be joined as a plaintiff against itself. Thus, PUM's infringement suit against Google must be dismissed for lack of standing.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court: (1) enter summary judgment that Konig breached his Employment Agreement by failing to transfer his interest in the patents-in-suit to SRI; (2) enter summary judgment that Google is now a rightful co-owner of the patents-in-suit; and (3) enter summary judgment dismissing PUM's infringement claims against Google for lack of standing.

OF COUNSEL:

Charles K. Verhoeven
David A. Perlson
Eugene Novikov
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California St.
San Francisco, CA 94111
Tel.: (415) 875-6600

Andrea Pallios Roberts
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Tel.: (650) 801-5000

Dated: February 21, 2011
**PUBLIC VERSION: FEBRUARY 28, 2011**
1003157/ 34638

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Google Inc.*