## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PERSONALIZED USER MODEL, L.L.P.,    :
                                             :

                Plaintiff,    :
                                             :                 Public Version
       v.                       :                 Released on September 20, 2013
                                             :

GOOGLE INC.,                          :

                Defendant.     :
_____ :     C.A. No. 09-525-LPS

GOOGLE, INC.,                       :

                Counterclaimant,    :

       v.                       :

PERSONALIZED USER MODEL, L.L.P.  :
and YOCHAI KONIG                 :

                Counterdefendants.  :

---

Karen J. Louden, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

Marc S. Friedman, SNR DENTON US LLP, New York, NY.
Mark C. Nelson, SNR DENTON US LLP, Dallas, TX.
Jennifer D. Bennett, SNR DENTON US LLP, Palo Alto, CA.

     Attorneys for Personalized User Model, L.L.P. and Yochai Konig.


Richard L. Horwitz, David E. Moore, Bindu A. Palapura, POTTER ANDERSON & CORROON LLP, Wilmington, DE.

Charles K. Verhoeven, David A. Perlson, Joshua L. Sohn, Antonio R. Sistos, Margaret P. Kammerud, QUINN EMANUEL URQUHART & SULLIVAN, LLP, San Francisco, CA.
Andrea P. Roberts, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Redwood Shores, CA.

     Attorneys for Google Inc.

---

**MEMORANDUM OPINION**

September 9, 2013
Wilmington, Delaware.

**STARK, U.S. District Judge:**

Presently before the Court are (1) Google Inc.'s ("Defendant" or "Google") Motion for Summary Judgment of Non-Infringement (D.I. 422), (2) Google's Motion for Summary Judgment of Invalidity (D.I. 417), (3) Google's Motion for Summary Judgment on its Breach of Contract Counterclaim, its Declaration of Ownership Counterclaim against Yochai Konig ("Dr. Konig"), and its Affirmative Defense of Lack of Standing against Personalized User Model, L.L.P. ("PUM") (D.I. 412), (4) PUM's Motion for Leave to Cross-Move for Summary Judgment in Response to Google's Motion for Summary Judgment (D.I. 444), and (5) PUM's Motion to Strike Dr. Jordan's Late-Disclosed Opinions (D.I. 415).

The Court heard oral argument on the pending motions on May 8, 2013 (hereinafter, "Tr."). For the reasons set forth below, the Court will grant in part and deny in part Google's motion for summary judgment of non-infringement and deny all of the other motions.

## I.    INTRODUCTION

PUM filed this action against Google on July 16, 2009, alleging infringement of U.S. Patent Nos. 6,981,040 (the "'040 patent"),[1] 7,685,276 (the "'276 patent")[2] (collectively with the '040 patent, the "patents-in-suit"), and 7,320,031 (the "'031 patent").[3] The patents-in-suit share the title "Automatic, Personalized Online Information and Product Services," have the same

---

[1] PUM asserts claims 1, 11, 22, and 34 of the '040 patent.

[2] PUM asserts claims 1, 3, 5, 6, 7, 21, 22 of the '276 patent.

[3] The patents-in-suit can be found in the record at D.I. 456 Exs. A and B. After a September 8, 2010 teleconference with the parties, the Court ordered PUM to reduce the asserted claims to no more than fifteen. (D.I. 88 at 26) As a result of this Order, PUM dropped the asserted claims of the '031 patent.

1

inventors – including Dr. Konig – and have essentially the same specifications.  Generally, the patents-in-suit relate to services and methods of providing a more personalized experience for internet users based on individual user interests.

## II.     GOOGLE'S SUMMARY JUDGMENT MOTIONS

### A.     Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party carries its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

2

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). However, the "mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute

is genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a

scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a

motion for summary judgment; there must be "evidence on which the jury could reasonably find"

for the nonmoving party. *Anderson*, 477 U.S. at 252.

### B.    Google's Motion for Summary Judgment of Non-Infringement

Google urges the Court to grant summary judgment of non-infringement of the patents-in-

suit because the accused products do not meet the "document," "estimate probabilities," or

"estimate parameters" limitations. Google also contends that summary judgment is appropriate

with respect to the '031 patent because there is no evidence of infringement. (D.I. 423 at 1)

PUM asserts that the following products infringe: Google Search, Google Search Ads,

3

Google Content Ads, Google YouTube Ads, Google News, Google YouTube video recommendations, and Google+. (*See* D.I. 513)

For the reasons discussed below, the Court will deny the motion with respect to the patents-in-suit, but will grant the motion with respect to the '031 patent.

### 1. "Documents" Limitation

#### a. Google Search

The two primary disputes between the parties are whether the claims require that documents are stored and whether a document identifier satisfies the document requirement. (D.I. 423 at 5-6; D.I. 460 at 4) The asserted claims require "a set of documents associated with the user" and "analyzing a document . . . to identify properties of the document" ('040 patent col. 32 ll. 31-32, 37-38), or "identifying properties" of a document ('276 patent col. 31 ll. 57-58). Each asserted claim also requires "updating user-specific data files, wherein the user-specific data files comprise the monitored user interactions with the data and a set of documents associated with the user." ('040 patent col. 32 ll. 29-32) The Court construed "document" to mean "an electronic file including text or any type of media." (D.I. 347 at 29-31; D.I. 348 at ¶ 9)

Relying on the Court's construction and claim language, Google contends that the document limitation requires the storing of documents. (D.I. 423 at 5-6; Tr. at 16-18) Google also argues that ██████████ are not equivalents to documents, noting that PUM's experts acknowledge that ██ are distinct from documents. (D.I. 423 at 6 (citing D.I. 424 Exs. D at 147, Ex. E at 17))

PUM argues that Google misinterprets the claim requirements and essentially reads out the language "documents *associated* with the user." ('040 patent col. 32 ll. 31-32 (emphasis

4

added)) PUM argues that the document limitation does not require storing. Rather, PUM asserts

that the limitations are met when documents are associated with a user via an identifier, ███████

███████ (Tr. at 31-32) In support of this contention, PUM cites to Dr. Michael J.

Pazzani's testimony. He stated that 

(D.I. 424 Ex. D at 145-46) PUM also

points out that Google's expert, Dr. Edward Fox, stated that ███████████████

████████████████████████████

███████████████ (D.I. 468 Ex. C at 84-85)

The Court concludes that PUM has presented sufficient evidence from which a

reasonable factfinder could find that Google Search satisfies the document limitation. With

respect to the first dispute, the Court is not persuaded that the accused products must store

documents. The Court's construction, upon which Google relies, does not require that

documents are stored. (D.I. 347 at 29-31) Instead, the Court's construction merely clarifies that

documents include data, such as text, but does not address whether the claims require storage of

documents. (*Id.*) Consistent with the Court's construction, PUM's expert opines that it is his

understanding of the patent that storing a document is not required. (D.I. 424 Ex. D at 134-36

(noting that documents may be dynamically created and need not be stored))

PUM has presented sufficient evidence to support a conclusion that the accused products

satisfy the documents requirement. With support from Drs. Pazzani and Fox, PUM contends that

"[a]nalyzing ███████ as a property of the document would be a form of analysis because ███

███ is in some sense part of the document." (Tr. at 34-35, 41) Dr. Fox stated in his deposition

that ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████ (D.I. 468 Ex. C at 84-85) Dr. Pazzani opines that Google Search analyzes

documents by ███████████████████████████████ . . . ." (D.I. 461 Ex. A at ¶¶

198-207) These expert statements support PUM's contention that the document limitation is met

because an identifier associated with a user is stored and is also associated with a document.

(*See, e.g., id.* at ¶¶ 151-62)

      **b.**    **Advertisements, News,** ██████

For substantially the same reasons, the Court will also deny Google's motion for

summary judgment with respect to Google Search and Content Ads, Google News, ██████

PUM presents expert opinion in support of its contention that the accused products satisfy the

documents requirement. (*See, e.g.,* D.I. 461 Ex. A at ¶¶ 276-83 (supporting opinion that

advertisements satisfy document limitation), 289-96, 334-37, 347-52 (opinion with respect to

Advertisements); *id.* at 411-14 (opinion with respect to News); D.I. 467 Ex. B at ¶ 14 (opinion

with respect to Google YouTube and Google+))

      **2.**    **"Estimate Probabilities" Limitation**

Next, Google argues that the accused products do not satisfy the "estimate probabilities"

limitation because PUM's infringement contentions rely on "calculation" rather than estimation.

Google also argues that the accused products do not infringe because they do not estimate

probabilities using a number between zero and one.

The Court construed "estimating" to mean "approximately or roughly calculating." (D.I.

347 at 32-33) Dr. Fox stated that it does not necessarily follow that calculation cannot be part of

estimation, even if the Court distinguishes the two (*see* D.I. 468 Ex. C at 138), and Dr. Pazzani

stated that the accused products estimate probabilities ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ as required by the claims. (*See* D.I. 461 Ex. A at ¶¶ 84-96, 208-37, 308-17, 366-77,

423-30, 457-60, 498-99, 531; D.I. 467 Ex. B at ¶¶ 45-54) Hence, PUM has presented evidence

from which a reasonable factfinder could find that Google satisfies the "estimates probabilities"

limitation.

The Court is not persuaded by Google's contention that the limitation requires

probabilities between zero and one. The Court construed "probability" to mean "numerical

degree of belief or likelihood." (D.I. 347 at 33-34) There is no requirement in the Court's

construction that the number be between zero and one.

The Court concludes that a reasonable factfinder could find for PUM. In particular, Dr.

Pazzani's extensive opinion on estimating probabilities could be credited by a reasonable juror.

### 3. "Estimate Parameters" Limitation

Finally, Google argues that none of the accused products meet the "estimate parameter"

limitation of the asserted claims. As with "estimate probabilities," Google argues that PUM's

infringement analysis relies on precise calculations rather than estimations, and estimations are

required by the claims. For the same reasons discussed above, the Court rejects this argument.

Google's remaining argument is that the "estimating parameters" limitation is not

satisfied because the accused products do not "store" parameters, as purportedly required by the

Court's construction. In construing the term "parameter" to mean "values or weights," the Court

reasoned that the specification supports the conclusion that parameters must be numbers because

they are "stored," "tuned," "estimated," and "continually updated." (D.I. 347 at 18) The issue of

7

whether parameters must always be stored was not before the Court, and the Court did not intend to suggest by its construction that the claims require that parameters must be stored.

PUM presents expert analysis in support of its contention that the accused Google products meet this limitation, and a reasonable factfinder could credit PUM's expert. Dr. Pazzani opines that "Google Search estimates parameters of a learning machine, wherein the parameters define a User Model specific to the user and wherein the parameters are estimated in part from the user-specific data files." (D.I. 461 Ex. A at ¶¶ 163-97) Elaborating on his analysis, Dr. Pazzani provides support that each Google          satisfies the claim element. (Id.) Dr. Pazzani goes through a similar analysis for each accused product, reaching the same conclusion that the product meets the "estimating parameters" element. (Id. at ¶¶ 297-304, 353-59, 415-21, 451-52, 493-94, 524-26, 556-57; D.I. 467 Ex. B at ¶¶ 23-41)

For the reasons discussed above, the Court will deny Google's motion with respect to the patents-in-suit.

### 4.        Non-Infringement of the '031 Patent

The Court will grant summary judgment of non-infringement of the '031 patent. PUM earlier dropped the asserted claims of the '031 patent and now provides no theories of infringement related to the '031 patent. Thus, PUM cannot meet its evidentiary burden.

PUM argues that the Court cannot grant summary judgment over unasserted claims because the Court does not have jurisdiction over claims that have been voluntarily withdrawn. The parties have failed to come to an agreement regarding a stipulation of dismissal of the '031 patent claims, so the Court believes it still has jurisdiction over claims relating to this patent. As there is no evidence to support a finding of infringement of the '031 patent, the Court will grant

summary judgment of non-infringement.

## C.     Google's Motion for Summary Judgment of Invalidity

Google argues that the patents-in-suit are rendered obvious by prior art, or are anticipated

by U.S. Patent No. 7,631,032 ("Refuah") (D.I. 419 Ex. A). For the reasons discussed below, the

Court will deny Google's motion.[4]

### 1.     Anticipation

"Anticipation is a factual determination that is reviewed for substantial evidence when

decided by a jury." *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149 (Fed. Cir.

2004). "A patent is invalid for anticipation if a single prior art reference discloses each and every

limitation of the claimed invention." *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377

(Fed. Cir. 2003). Additionally, "[a]n anticipating reference must enable that which it is asserted

to anticipate." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008). A single

prior art reference must also disclose the limitations as arranged in the claim. *See Net MoneyIN,*

*Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). As with all challenges to the

validity of a patent, the party seeking to invalidate a patent bears the burden of proving

anticipation by clear and convincing evidence. *See Hybritech Inc. v. Monoclonal Antibodies,*

*Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

PUM argues that Refuah does not anticipate because it fails to disclose a learning

machine, estimating a probability, or a probability $P(u|d)$ that a user would find a web page or

---

[4]Reexamination of the asserted claims is ongoing. Given the different standard the PTO
uses in assessing validity, *see* MPEP § 706 (8th ed. Rev. Aug. 2012), and the ongoing status of
the reexamination, the Court is not persuaded that the reexamination carries much weight at this
stage. (*See* Tr. at 105)

9

document interesting, and because Refuah does not operate on web pages or documents but instead on entire web sites. (D.I. 455 at 1)

The dispute as to whether Refuah discloses "a computer-implemented method for providing automatic, personalized information servers to a user" ('040 patent col. 32 ll. 24-25) – that is, whether Refuah discloses a learning machine – compels the Court to deny the motion. PUM presents expert testimony from Dr. Jaime G. Carbonell, who opines that Refuah does not disclose what is claimed. (D.I. 457 Ex. A at ¶ 317) Dr. Carbonell also states that Refuah does not disclose other claimed elements such as estimating parameters, taking the view that "[t]o the extent Refuah associates numbers with a topic . . . [t]hese are not parameters of a learning machine, but rather user-provided input." (*Id.* at ¶ 322)

Google's expert, Dr. Michael I. Jordan, described Refuah as a "high-level," "overall description of an interface and a way of approaching user interface design in the context of personalization," and added that Refuah "does not describe a specific learning machine." (D.I. 456 Ex. C at 303, 311) Dr. Carbonell echoed Dr. Jordan's statements, elaborating that Refuah does not name, teach, or suggest a learning machine because Refuah simply gathers information, which does not alone result in a learning machine with predictive ability. (*Id.* Ex. D at 217-18, 220)

The Court concludes that the statements of both Drs. Jordan and Carbonell render summary judgment inappropriate. *See Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*, 143 F. App'x 320, 330 (Fed. Cir. July 25, 2005) ("expert testimony sufficient to raise a genuine issue of material fact"); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998) (affirming denial of summary judgment because "summary judgment papers [were] not

sufficient to resolve the differences in expert opinion"). Whether Refuah teaches a learning

machine is a genuine dispute of material fact, and thus, the Court will deny Google's motion for

summary judgment of anticipation over Refuah.

### 2. Obviousness

A patent may not issue "if the differences between the subject matter sought to be

patented and the prior art are such that the subject matter as a whole would have been obvious at

the time the invention was made to a person having ordinary skill in the art to which said subject

matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying

factual findings concerning: (1) the scope and content of the prior art; (2) the differences between

the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective

considerations of nonobviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

"A party seeking to invalidate a patent based on obviousness must demonstrate by clear and

convincing evidence that a skilled artisan would have been motivated to combine the teachings

of the prior art references to achieve the claimed invention, and that the skilled artisan would

have had a reasonable expectation of success in doing so." *Procter & Gamble Co. v. Teva

Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (internal quotation marks omitted); *see

also Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009) ("An

obviousness determination requires that a skilled artisan would have perceived a reasonable

expectation of success in making the invention in light of the prior art."). The Supreme Court

has warned that while an analysis of any teaching, suggestion, or motivation to combine known

elements is useful to an obviousness analysis, the overall obviousness inquiry must be

"expansive and flexible." *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415, 419 (2007).

11

PUM argues that there are genuine issues of material fact that render summary judgment inappropriate. Specifically, PUM presents expert testimony from Dr. Carbonell that the limitations of the patented inventions are not all present in the prior art. (*See* D.I. 457 Ex. A at ¶¶ 405-38) For example, Dr. Carbonell disputes Dr. Jordan's conclusion that the prior art references teach the following limitations: a learning mechanism for web personalization (*id.* at ¶¶ 204, 406 (noting that Montebello paper is only "position paper" disclosing general ideas, not enabling functions)); "transparently monitoring . . . while engaged in normal use of a computer" (*id.* at ¶ 409 (explaining that Dr. Jordan's analysis of prior art ignores requirement "while engaged in normal use" and fails to consider that prior art would require "major modifications" to transparently monitor)); "estimating parameters of a learning machine" (*id.* at ¶¶ 411-14 (stating that prior art does not "disclose how to build a learning machine based on user-specific data files" or "how to estimate parameters of a learning machine," and other prior art references are not relevant to teaching limitation)); and "estimating a probability P(u|d)" (*id.* at ¶¶ 418-19 (stating that Dr. Jordan fails to consider that prior art does not disclose models containing "parameters that are estimated at learning time" and "do not estimate a probability")). Even if Google could establish that every element of the patented invention was present in the prior art, Dr. Carbonell opines that the "mere presence of elements falls considerably short of rendering an invention obvious."[5] (*Id.* at ¶ 407) At bottom, Dr. Carbonell's report creates a "battle of the experts" rendering summary judgment inappropriate. *See generally Transonic Sys., Inc. v. Non-*

---

[5]By way of example, Dr. Carbonell describes the patent covering Dynamite. He states that the main ingredients of Dynamite, nitroglycerine, a silica-based earth, and a blasting cap, were all known, and even though there was a need for a stable explosive, the mere existence of the elements was insufficient to render Dynamite obvious.

*Invasive Med. Techs. Corp.*, 143 F. App'x 320, 330 (Fed. Cir. July 25, 2005); *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998).

Moreover, the Court is persuaded that PUM has presented evidence creating a genuine issue of material fact with respect to secondary considerations. Secondary considerations can be used to rebut allegations that an invention is obvious. *See Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997). "[E]vidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not." *Sratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983). For example, a patentee may offer evidence showing a nexus between a product's commercial success and the claims of a patent. *See Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011). Whether a patented invention is commercially successful is a question of fact. *See Graham*, 383 U.S. at 17.

PUM relies on Dr. Carbonell's opinion that secondary factors such as "commercial success, failure of others, long-felt but unresolved need, copying, accolades for the invention, licensing of the patent, and teaching away by the prior art" support a conclusion that the patents-in-suit are not obvious. (D.I. 457 Ex. A at ¶¶ 490-510) Dr. Carbonell conducted his analysis under the proper framework, including the requirement of a nexus between the patents-in-suit and secondary considerations. (*See id.* at ¶¶ 491-92) He found that

(*id.* at ¶ 494), rebutting Dr. Jordan's opinion that there are no secondary considerations.

13

Additional secondary considerations, such as long felt need, further support Dr.

Carbonell's opinion on nonobviousness. (*See id.* at ¶¶ 496-500) For example, Dr. Carbonell

relies on, among other things, Google's internal attempts to create a personalized search model.

██████████████████████████████████████████████████

██████████████████████████████ (*Id.* at ¶ 499 (quoting D.I. 459 Ex. 44)) A

2003 CNET article likewise stated that "web companies outside the search industry have long

made attempts to create personalization features, but most of these attempts have fallen short of

expectations." (*Id.* at ¶ 501 (quoting D.I. 459 Ex. 45))

The Court concludes that Dr. Carbonell's statements related to secondary considerations

raise triable issues of fact and, therefore, again, summary judgment is inappropriate. *See*

*generally Borough of Lansdale v. Pa. Elec. Co.*, 692 F.2d 307, 313 (3d Cir. 1982) (noting that

battle of experts presents factual dispute to be resolved by fact finder).

## C. Google's Motion for Summary Judgment on its Breach of Contract Counterclaim, Declaration of Ownership Counterclaim, and Affirmative Defense of Lack of Standing

Google argues that as a result of its January 18, 2011 Purchase Agreement with SRI, it

acquired all of SRI's rights in the patents-in-suit. Google contends that Dr. Konig, who was

employed at SRI from April 1996 through August 1999, breached his Employment Agreement

because he failed to "promptly disclose to SRI all discoveries, improvements, and inventions . . .

conceived or made . . . during the period of . . . employment" as required by his Employment

Agreement. (D.I. 414 Ex. A) Google argues that Dr. Konig conceived of the invention in the

"generic sense" while employed at SRI. (Tr. at 112)

PUM responds that under the legal definition of conception, Dr. Konig did not conceive

14

of the invention during his time at SRI and consistently testified that he conceived of the specifics of the invention sometime between September and December of 1999. (D.I. 454 Ex. A at 61, 71; *id.* Ex. J at 273, 277-79 (supporting statement from co-inventor Mr. Roy Twersky))

The parties agree that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code. § 1636. (D.I. 413 at 8; Tr. at 126). Relying on Cal. Civ. Code § 1649, Google argues that "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed." (D.I. 493 at 2) Google argues that the lay definition controls because Dr. Konig testified that he did not understand the patent meaning of "conception" at the time of contracting. (*Id.* at 2-3) PUM argues that whether the parties intended to use the legal or lay meaning of "conception" in the employment agreement is a question of fact based on evidence of "outward manifestations" of intent. (Tr. at 126-27)

The Court concludes that summary judgment is inappropriate because the term "conception" in the agreement between SRI and Dr. Konig is ambiguous and, thus, there is a question of fact as to whether the parties intended at the time of contracting to use the lay or legal definition. *See Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (Cal. 1965) (stating that it is a "judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence"); *see also* Restatement (Second) of Contracts § 212 (1981) ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence"). Further, the Court concludes that even if it could find that the lay definition governed, there would be a genuine issue of fact as to Dr. Konig's understanding at

15

the time of contracting of the lay definition of conception.

The Court cannot conclude as a matter of law that Dr. Konig conceived of the invention during his employment at SRI, and, therefore, the Court will deny Google's motion.[6] It follows that the Court will deny Google's request for a declaration that it is a co-owner of the patents-in-suit, and will also deny summary judgment that PUM lacks standing for failure to join all co-owners as plaintiffs.

## III. PUM'S MOTIONS FOR LEAVE AND TO STRIKE

### A. PUM's Motion for Leave to Cross-Move for Summary Judgment

Pursuant to the Court's Scheduling Order, summary judgment motions were due by December 6, 2012. (D.I. 411) PUM filed its motion for leave to cross-move for summary judgment several weeks later, on January 2, 2013. (D.I. 444) Google opposes PUM's motion as untimely.

Pursuant to Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2008); *see also Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 2545959, at *3 (D. Del. June 24, 2010). "[T]he good cause standard under Rule 16(b) hinges on the diligence of the movant, and not on prejudice to the non-moving party." *Leader Techs.*, 2010 WL 2545959, at *4.

The Court concludes that PUM has not demonstrated good cause for its late summary

---

[6]Given the Court's conclusions, there is no need to address the parties' arguments related to Section 2870 of the California Labor Code.

16

judgment filing. PUM presents no explanation for its delay, and merely asserts that allowing the

cross-motion would serve the interest of justice. (D.I. 444 at ¶ 5; Tr. at 127-29) The Court

agrees with Google and concludes that PUM could have brought its summary judgment motion

in the time provided for in the Scheduling Order. (D.I. 445 at 2)

As PUM has failed to demonstrate good cause for its late filing, the Court will deny

PUM's motion for leave.

### B. PUM's Motion to Strike Dr. Jordan's Late-Disclosed Opinions

PUM boldly accuses Google of "act[ing] in bad faith by interfering with Dr. Jordan's

deposition testimony, conferring with him, and then immediately having him recant his sworn

testimony on redirect." (D.I. 416 at 17) PUM has failed, however, to produce support for this

allegation. Nor did PUM confer with Google prior to airing this serious accusation of

misconduct. (Tr. at 98-100)

PUM requests that the Court strike Dr. Jordan's allegedly late-disclosed opinions on

obviousness advanced for the first time during his deposition. (D.I. 416 at 1) PUM argues that

Dr. Jordan's newly disclosed obviousness contentions violate the Court's Scheduling Order (D.I.

363) and the Federal Rules of Civil Procedure, prejudice PUM, and are advanced without

substantial justification. (D.I. 416 at 9) Google responds that Dr. Jordan did not advance new

theories during his deposition and any statements made in his deposition are supported by his

expert report. The Court agrees with Google.

In his report, Dr. Jordan states: "[i]t is my opinion that each of the asserted claims are

invalid at least for anticipation and/or obviousness in light of the prior art." (D.I. 421 Ex. 1 at

¶ 2) Dr. Jordan then spends approximately 80 pages discussing how the prior art anticipates all

17

of the asserted claims. He follows this analysis with over 50 pages discussing obviousness, noting that "[t]o the extent that [the prior art references] do not disclose limitations in the asserted claims, this section demonstrates that those limitations consist only of obvious applications of art known to one of ordinary skill, and thus the claims are invalid for obviousness in light of each reference." (*Id*. at ¶ 315) He further incorporates, by reference, an exhibit consisting of an element-by-element claim chart of all the asserted claims with references to the prior art. (*Id*. at ¶ 316) If there was any question remaining as to whether Dr. Jordan's obviousness analysis was intended to cover all asserted claims, his report ends with the statement that "All the Asserted Claims are obvious." (*Id*. at ¶ 459) Indeed, PUM's expert, Dr. Carbonell, stated that he understood Dr. Jordan's opinion to be that "every claim of the patents-in-suit is obvious." (D.I. 451 Ex. C at ¶ 404)

Dr. Jordan's extensive opinion on obviousness theoretically encompasses hundreds of combinations of prior art, and Google will have to reduce those combinations prior to trial. Nonetheless, the Court concludes that Dr. Jordan did not assert new theories of invalidity during his deposition. Thus, the Court will deny PUM's motion.[7]

## IV.   CONCLUSION

For the reasons given above, the Court will grant in part and deny in part Google's Motion for Summary Judgment of Non-Infringement (D.I. 422), deny Google's Motion for Summary Judgment of Invalidity (D.I. 417), deny Google's Motion for Summary Judgment on its Breach of Contract Counterclaim, its Declaration of Ownership Counterclaim, and its

---

[7]As the Court concludes that Dr. Jordan's statements did not violate the Scheduling Order, the Court will not address PUM's analysis of the *Pennypack* factors. (D.I. 416 at 13-17)

18

Affirmative Defense of Lack of Standing (D.I. 412), deny PUM's Motion for Leave to Cross-Move for Summary Judgment in Response to Google's Motion for Summary Judgment (D.I. 444), and deny PUM's Motion to Strike Dr. Jordan's Late-Disclosed Opinions (D.I. 415). An appropriate Order follows.