## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PERSONALIZED USER MODEL, L.L.P.,                  :
                                                  :
               Plaintiff,                  :
                                                  :
      v.                                       :          C.A. No. 09-525-LPS
                                                  :
GOOGLE INC.,                                      :
                                                  :
               Defendant.                  :
                                                  :

### MEMORANDUM ORDER

Pending before the Court are:

1.   Personalized User Model, L.L.P.'s ("PUM") Motion to Exclude Portions of Dr. Edward Fox's Non-Infringement Report for Failure to Apply the Court's Claim Constructions (D.I. 555);

2.   Google Inc.'s ("Google") Motion to Exclude Certain Opinions of Dr. Michael Pazzani (D.I. 552);

3.   PUM's Motion *in Limine* to Preclude Google from Presenting Argument or Evidence that it is an Owner of the Patents-in-Suit or on other Related Legal and Equitable Issues (D.I. 588 Ex. 12);

4.   PUM's Motion *in Limine* to Exclude Evidence of Reexamination Proceedings at Trial (*Id.* at Ex. 13);

5.   PUM's Motion *in Limine* to Preclude Google from Characterizing it as a Troll or Otherwise Presenting Derogatory Comments (*Id.* at Ex. 14);

6.   Google's Motion *in Limine* No. 1 to Preclude Evidence or Arguments on Copying or Pre-Suit Knowledge (*Id.* at Ex. 15);

7.   Google's Motion *in Limine* No. 2 to Preclude Evidence or Arguments Regarding Google's Revenues or Acquisition of Kaltix (*Id.* at Ex. 16);

8.   Google's Motion *in Limine* No. 3 to Preclude Evidence Regarding the Meaning of "Conceived" (*Id.* at Ex. 17); and

9.   Various miscellaneous issues raised by the parties in the Proposed Pretrial Order.

(*Id.* at Exs. 19-20)

The Court heard oral argument on these various motions and issues during the pretrial conference on February 26, 2014. A jury trial on infringement, invalidity, and breach of contract will begin on March 10, 2014.

After reviewing the materials submitted, and having heard argument, IT IS HEREBY ORDERED as follows:

## I. Daubert Motions

### A. PUM's Motion to Exclude Portions of Dr. Edward Fox's Non-Infringement Report for Failure to Apply the Court's Claim Constructions (D.I. 555)

PUM requests that the Court exclude portions of Dr. Fox's non-infringement report because he disregarded the Court's claim constructions. In particular, PUM argues that in offering his non-infringement opinion, Dr. Fox did not apply the Court's constructions of the terms (i) "specific" or "specific to the user," (ii) "estimating," and (iii) "probability." (*See* D.I. 556 at 1-2)

During claim construction, Google argued that "specific" meant "unique," such that "each individual user has a different User Model that is unique to that individual user." (D.I. 347 at 25) The Court disagreed with Google and explained that in the context of the patents-in-suit multiple users can have the same User Model. (*Id.* at 27) The Court expressly noted that different users may share each others' User Models. (*Id.*) ("Elsewhere, the patent notes that these prototype users are called 'hats,' and that users can choose to try on different 'hats' in certain circumstances.") Thus, the Court rejected the argument that "specific" to a user meant "exclusive" to a user. The Court also determined that the specificity of a User Model stems from

2

differences in "numerical values" as opposed to "variables." (*Id.*)

In his expert report, Dr. Fox opines that "the Court did not address whether each user has his *own* learning machine . . . or whether users might share the same learning machine . . . ." (D.I. 557 Ex. 1 at ¶ 317) The Court has already held that "user-specific" did not mean exclusive to a particular user. In various other parts of his report, Dr. Fox opines that "specific" must be "exclusive" to a user. As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact, all of these portions of Dr. Fox's non-infringement report are stricken. PUM's motion with respect to this first issue is GRANTED.

PUM argues that Dr. Fox also misapplies the Court's construction of the "estimating" term. The Court construed "estimating" to mean "approximating or roughly calculating." (D.I. 347 at 33) In coming to this conclusion, the Court also found that "estimating" is a "measurement that is not entirely precise." (*Id.*) Dr. Fox's opinion regarding "estimating" relates to whether a calculation is too precise to be an estimate. His opinion does not contradict the Court's claim construction. Instead, it goes to a fact dispute that will be a proper subject of the infringement trial. PUM's motion with respect to this second issue is DENIED.

PUM's final argument related to "probability" was rendered moot by Google's response brief and the parties' representations at the pretrial conference. (*See, e.g.*, D.I. 576 at 11-12) PUM's motion with respect to this third issue is DENIED.

Accordingly, PUM's Motion to Exclude Portions of Dr. Edward Fox's Non-Infringement Report for Failure to Apply the Court's Claim Constructions (D.I. 555) is GRANTED IN PART and DENIED IN PART.

3

**B.**     **Google's Motion to Exclude Certain Opinions of Dr. Michael Pazzani (D.I. 552)**

In arguing this motion at the pretrial conference, PUM stated that it would not elicit an opinion from Dr. Pazzani on any legal issue, such as an interpretation of California law and whether patent rights transferred to Dr. Konig's former employer. PUM also agreed that portions of Dr. Pazzani's expert report should be stricken. To the extent there remains a dispute on these points, the Court agrees with Google that Dr. Pazzani shall not provide testimony on legal issues, including his experience at Rutgers with assignment and transfer of patent rights.

Dr. Pazzani will be permitted to provide technical evidence, including opinion, from the perspective of one of skill in the art of the patents-in-suit, including whether Dr. Konig's work "related" to SRI's work and "resulted" in the patented technology. Google's criticisms of this testimony, including evidence Dr. Pazzani did or did not consider and Dr. Pazzani's statement regarding December as opposed to August 1999, are matters that can be explored on cross-examination and go to the weight and not admissibility of the evidence.

Accordingly, Google's motion is GRANTED IN PART and DENIED IN PART. The parties shall, **no later than Monday, March 3 at 10:00 a.m.**, submit a proposed order indicating precisely which portions of Dr. Pazzani's expert report are stricken, consistent with this Order.

**II.**     **Motions *in Limine***

**A.**     **PUM's Motion *in Limine* to Preclude Google from Presenting Argument or Evidence that it is an Owner of the Patents-in-Suit or on other Related Legal and Equitable Issues**

The parties agree that Google's claims for a declaration of co-ownership, lack of standing, and constructive trust are not jury issues. PUM has requested that Google be

4

"precluded from mentioning the [equitable] relief it seeks" because that may "unfairly sway the jury on the breach of contract claims." (D.I. 588 Ex. 12) At the pretrial conference, PUM agreed that it is appropriate for Google to elicit evidence and make arguments to the effect that PUM's inventors may have had an incentive to change their position as to the date of conception of the inventions due to concern that PUM may otherwise lose ownership of the patents-in-suit. It appears to the Court that the parties are in agreement on this aspect of PUM's motion. The parties shall, **no later than Monday, March 3 at 10:00 a.m.**, submit a proposed order memorializing their agreement on this issue. This portion of PUM's motion is DENIED AS MOOT.

The portion of PUM's motion that remains in dispute is whether Google's claim for "conversion" should be tried before the jury at the upcoming trial. This portion of PUM's motion is GRANTED.

The Court agrees with Google that it has a Seventh Amendment right to a jury trial for its conversion claim. *See Ross v. Bernhard*, 396 U.S. 531, 533-34 (1970) ("The Seventh Amendment, for example, entitle[s] the parties to a jury trial in actions for damages to a person or property, for libel and slander, for recovery of land, and for *conversion of personal property*.") (emphasis added). In its Amended Complaint, Google demanded "[a]n award of compensatory and punitive damages to Google for Konig's and PUM's conversion of Google's property" as well as a "trial by jury on all issues so triable." (D.I. 185 at 18) Thus, even though the parties hotly dispute ownership of the patents, Google has a right at some point to have its conversion claim tried by a jury.

However, the Court does not believe that Google is entitled to have conversion tried now,

5

to the same jury that is deciding infringement and validity of the patents as well as breach of

contract. Adding conversion to the forthcoming trial would increase the risk of confusing the

jury and unfairly prejudicing PUM, for reasons including that the inclusion of this claim would

expressly confront the jury with the reality that if Google prevails, it (Google) will own the

patents-in-suit. Under the circumstances, including that damages and willfulness have been

bifurcated, this is inappropriate and unnecessary. Consistent with the concerns of Federal Rule

of Evidence 403, the Court finds that the risk of confusion and unfair prejudice substantially

outweighs the probative value of the conversion evidence. Google's conversion claim can be

tried to a jury along with the issues of damages and willfulness.

## B.    PUM's Motion *in Limine* to Exclude Evidence of Reexamination Proceedings at Trial

PUM requests that the Court bar "any mention of, argument, or evidence regarding, the

reexamination proceedings." (D.I. 588 at Ex. 13) This request is GRANTED. Given the non-

finality of the reexamination proceedings (appeal rights have not been exhausted) and the

different standards applicable to reexaminations and litigation, the probative value of the

reexamination evidence is substantially outweighed by the risk of unfair prejudice and the risk of

confusing the jury. The parties may request the opportunity to use as evidence statements made

or evidence proffered during the reexaminations so long as this is done without referencing either

the reexamination or the rejections.

## C.    PUM's Motion *in Limine* to Preclude Google from Characterizing It as a Troll or Other Derogatory Comments

PUM requests that the Court preclude Google from using the terms "patent troll," "non-

practicing entity," and "paper patent" or otherwise indicating that PUM does not practice the

6

asserted patents at trial. (D.I. 588 at Ex. 14)  Google has agreed not to use the term "patent troll"

or other similar pejorative terms.  To that extent, PUM's motion is GRANTED.

      Google argues that it should be allowed to (i) clarify to the jury that PUM is not Utopy,

the operating company and predecessor-in-interest to PUM whose name appears on the patent

and (ii) rebut the argument that the patents were a commercial success.  During the pretrial

conference, PUM explained that at trial it will be "necessary background for the jury to

understand what the invention is . . . the background of when it was developed, how it was

developed." (Tr. at 46)  If PUM is going to present its evidence as to the background and

development history of the patent, in fairness Google must also be given the opportunity to do so,

which here can include proof of the distinction between Utopy and PUM.

      Additionally, Google may attempt to ***rebut*** PUM's effort to show commercial success of

the patents-in-suit by presenting evidence that the patents were not commercial successes for

Utopy or PUM.  Although showing lack of commercial success is not indicative of obviousness,

*see, e.g.*, *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 878 (Fed. Cir. 1993), a lack of

commercial success may be probative evidence to rebut a showing of commercial success.

Evidence showing that Utopy and PUM were not successful at the times they owned the patents-

in-suit is probative of Google's contention that its own commercial success is in no way due to

its alleged practice of the patented technology.  Evidence of Utopy's financial state prior to

selling the patents-in-suit and the "tax-consequences" and circumstances surrounding the sale of

the patents is relevant to rebutting PUM's contentions that the patents are commercially

successful; any unfair prejudice to PUM from introduction of this evidence does not substantially

outweigh its probative value.

PUM requests that Google be precluded from referring to Levino as a foreign company. PUM's request is GRANTED. However, if relevant admissible evidence happens to contain a foreign address, that evidence will not be excluded solely based on the foreign address.

Finally, PUM seeks to preclude (i) evidence that named inventor Michael Berthold felt threatened by PUM's attorneys, (ii) evidence regarding Jack Banks' prior criminal charges, and (iii) evidence regarding his company's role in the ownership of the patents-in-suit. Given the parties' representations as to the unlikelihood of these witnesses being called to testify live at trial, the Court deems these disputes unripe and/or moot. Either side may at trial again raise any of the three issues discussed in this paragraph, should circumstances warrant.

Accordingly, PUM's motion is DENIED except to the extent expressly noted above.

### D.     Google's Motion *in Limine* No. 1 to Preclude Evidence or Arguments on Copying or Pre-Suit Knowledge

Google requests that the Court preclude any evidence of copying or pre-suit knowledge that PUM may offer in this trial. (D.I. 588 at Ex. 15) Because inducement and willfulness are not parts of this case, the Court will GRANT Google's request. The evidence of pre-suit knowledge – including PUM's pre-suit letters and Mr. Konig's speech – are irrelevant to this phase of the trial. As for evidence relating to the citation of the '040 patent-in-suit in a Google patent application, the minimal probative value is substantially outweighed by the risk of unfair prejudice to Google, including the risk that the jury will believe Google is guilty of willful infringement or copying, issues that are not the subject of this trial.

### E.     Google's Motion *in Limine* No. 2 to Preclude Evidence or Arguments Regarding Google's Revenues or Acquisition of Kaltix

Google seeks to preclude PUM from introducing evidence or arguments regarding

Google revenue or its acquisition of Kaltix Corp. (D.I. 588 at Ex. 16)  Allowing the jury to learn, through financial information, that Google is a very successful company is not unduly prejudicial to Google.  Google may effectively challenge the weight the jury should give this evidence through cross-examination.  Similarly, the value Google placed on its acquisition of Kaltix is at least probative of commercial success.  The extent to which, if any, Kaltix's personalization technology is within the scope of the patents-in-suit and contributes to Google's success, is a disputed issue.  Accordingly, Google's motion is DENIED.

### F.   Google's Motion *in Limine* No. 3 to Preclude Evidence Regarding the Meaning of "Conceived"

Google's final motion in limine seeks to preclude evidence that "conceived" should be given its patent law meaning, based on Google's contention that PUM failed to timely disclose any such evidence in its responses to interrogatories.  This motion is DENIED.  There is no indication that Google relied on PUM's interrogatory responses or that Google has had any lack of adequate notice of PUM's evidence on this point, particularly given the extensive litigation there has been in this case with respect to conception of the patents.

### III.   Miscellaneous Issues

The parties submitted extensive lists of "Miscellaneous Issues," the discussion of which consumed 14 pages of attachments to the pre-trial order.  The Court heard argument on these issues during the pretrial conference.  To the extent not otherwise resolved at the pretrial conference, the Court exercises its discretion to resolve these issues as follows:

a.     Google shall not be permitted to rely on two articles authored by PUM's infringement expert, Dr. Pazzani, as part of Google's obviousness case.  The scope of this case

9

must be narrowed and, under the circumstances, Google's disclosure of its intentions with respect to these articles is untimely and unfairly prejudicial to PUM.

      b.      Google shall not be permitted to call Matthew Montebello as one of its prior art witnesses. It is unclear whether Mr. Montebello has any relevant testimony to provide. The scope of this case must be narrowed and, under the circumstances, Google's disclosure of its intentions with respect to Mr. Montebello is untimely and unfairly prejudicial to PUM.

      c.      PUM is granted leave to file a motion *in limine* to preclude Google from referring to any purported recent changes in its technology. PUM's motion, which **shall not exceed three pages**, shall be filed by **Sunday, March 2 at 10:00 a.m.** Google's response, which **shall not exceed three pages**, shall be filed by **Tuesday, March 4 at 10:00 a.m.** PUM's reply, which **shall not exceed one page**, shall be filed by **Wednesday, March 5 at 10:00 a.m**.

      d.      The parties shall advise the Court of their proposal(s) for the order of proof, and how to handle the examination(s) of witnesses both sides seek to call (i.e., cross may exceed scope of direct or witness will be called multiple times) by joint letter to be submitted no later than **Wednesday, March 5 at 10:00 a.m**.

      e.      Equitable issues will be addressed at a separate proceeding. The Court will discuss with the parties the timing of such separate proceeding after receiving the jury verdict at the March trial.

      f.      PUM is granted leave to file a motion relating to the legal framework governing the statute of limitations applicable to Google's breach of contract claim. PUM's motion, if any, and opening brief **not to exceed ten pages**, shall be filed by **Sunday, March 2 at 10:00 a.m.** Google's responsive brief, **not to exceed ten pages**, shall be filed by **Wednesday, March 5 at**

**10:00 a.m.** PUM's reply brief, which **not to exceed three pages**, shall be filed by **Thursday, March 6 at 10:00 a.m**.

g.     The Court has previously provided notice to the parties that it would allocate a maximum of 22 hours per side for their trial presentations.  (D.I. 537)  Decisions announced during the pretrial conference and in this Order have eliminated portions of each side's case. Additionally, the Court believes that substantial further narrowing of the issues and focus is required in order for both sides to receive a fair trial and for the jury to evaluate the evidence and render a verdict.  Accordingly, each side will be given a **maximum of 17 hours** for its trial presentation, with time calculated in the manner explained during the pretrial conference.

February 27, 2014                                             UNITED STATES DISTRICT JUDGE